Woodruff, J.
The whole of the lot No. 4 State street, 28 feet in front and rear, was conveyed to Daniel Penfield, by Watson and Greenleaf, and afterwards by Jas. T. Watson, to Jonathan Ogden, under whom the plaintiffs hold the same.
The reservation in the deed from Watson and Greenleaf to Penfield ; the covenant by Watson and Greenleaf, and the subsequent reservation in the deed to Jonathan Ogden, show, 1st. That Penfield was expected to erect, and did, in fact, erect the house upon the lot conveyed to him, covering the whole 28 feet.
2d. That Watson intended to reserve and have a right of property in half of the wall which Penfield should erect—not for the purpose of removal, as of his own absolute property, but to be used and enjoyed where it stood, (and just as Penfield or his grantees should build, keep up, and sustain the same, and not otherwise,) as and for a protection and support to the house on the adjoining lot, No. 5.
*688 3d. That it was intended. and expected, that Watson or his grantees should have a house adjoining, (on lot No. 5,) whose front should begin at the westerly termination of the 28 feet granted, but which should be connected with, and use the end wall as a protection and support thereto; and for that purpose, and for such use, the property in one half thereof, should be vested in Watson.
4th. The wall was not only to be built by Penfield, but was to be kept up, and sustained by him and his grantees, heirs, etc. Watson and his heirs and assigns were bound to pay one half of the expense of keeping up and sustaining the entire wall. But they had, by virtue of the reservation, no right to build, nor any right to interfere with the wall, save only to exercise the limited right which its devotion to the special purpose, above stated, secured to them—and save only to use and enjoy the wall in the manner above stated, he or they had no right to come over the exterior line of the 28 feet at all. They were neither bound nor at liberty even to repair, keep up, or sustain the wall, so long as Penfield and his heirs or assigns were ready and willing to do so. They were to pay him for doing this, to the extent of one half of the expense. If Penfield and his heirs or assigns neglected or refused, they might, doubtless, ex necessitate, perform the work, and seek indemnity; but this they would do, as one of their remedies, upon Penfield’s default, and not because it was a privilege conferred directly by the terms of the deed or the reservation.
5th. That absolute property in the half of the side-wall, in the sense which would entitle Watson to remove it, or any part of it, was not the intention of the parties, nor the true construction of the instruments, is apparent, not only from the fact, that it was a wall to be erected by Penfield, but also from the fact, that it was to be kept up and sustained by him, and his heirs and assigns, while Watson was to pay one half of the expense. And if the defendants are at liberty to insist upon their ownership, as importing any other rights than above indicated, it is obvious to observe, that if their rights, as owners, were to be strictly construed, then no part of the wall on the westerly side will appear on the face of the wall on the front—and no part of the wall on the front of the lot will appear on the face, or outer surface, of *689 the side-wall. There is no more propriety in saying, that six inches in width on the face of the front is half of the end of the side-wall, than there would be in saying, that the like depth appearing on the outer surface of the side-wall is half of the end of the front wall. A diagonal from the corner drawn through the wall, leaving the face of both walls entire, is the strict line of division between them. On a narrow and technical construction of the strict right of property, this view of the line and limit of the reservation would be accurate. But in the view above taken of the practical uses and purposes for which the reservation was made, it is clear, I think, that the defendants have the use of the wall, so that it shall serve as a protection and support to their building, without so rigid a regard to the line last suggested.
But neither view of the subject gives them any right to cut away or remove the front surface for any purpose.
6th. Watson, and under him, the defendants, were to have and use the wall that Penfield and his assigns should build, and did build, and as he or they did build it, and not otherwise, and no other or different wall. They had no right, (so long as Pen-field and his assigns did erect, keep up, and maintain a wall on the westerly side of the lot conveyed to Penfield,) to build any wall, or any part of a wall on the premises conveyed, nor to enter on those premises for any such purpose. They were to take, have, and use the wall Penfield, etc. built, and that only. They cannot go upon, or over the line of the 28 feet, to build under nor over the wall he erected. Nor can they extend the front of their building upon or over any part of the lot granted to Pen-field. If the wall erected, and heretofore sustained, does not now fully satisfy the wishes of the parties, its alteration or extension is a proper subject for negotiation and mutual arrangement.
And finally, the construction above given to the deeds—the reservation and the covenants—is the construction given thereto by the immediate parties and their grantees. The actual erection of the houses in the manner above suggested, and the use and enjoyment thereof for over sixty years, with all the benefits and advantages to the plaintiffs, and their grantors, (if any there be,) in having the front of their house exhibit a width of 28 feet, ought to conclude the parties. Indeed, the very fact, that the *690 defendants now assume to make their front wall extend over the place in contest, is an admission that they are seeking not to use or treat it as a side-wall of the adjoining house, (erected by another,) in which they have an ownership, but to make it a part of their own front wall, and so to exhibit it in external appearance.
The instruments, and the acts, and conduct of the parties under them, for over 60 years, show, I think, not only that the whole land was conveyed, and intended to be conveyed, but that the intent was, from the beginning, that Penfield and his assigns should have a front óf 28 feet, and a building of that width, subject only to a use of one half of the wall on the west side, (which he should erect, and he and his assigns should keep up and sustain,) as a protection and support to the house of Watson and his assigns, which they might erect adjoining, but not in any part upon or over the premises described in the deeds.
And Penfield having so erected his house, and the same having been used and enjoyed, as it now is, for more than 60 years, the front face of the wall in front, is to be protected from encroachment.
These views in like manner compel me to the conclusion that without the plaintiffs’ consent, the defendants have no right to build under nor upon the wall, nor to extend it towards the rear. As it was built, and has been kept up and sustained, they have a right to use it as a support to the house or store which they are now building.
The injunction heretofore granted, must, therefore, be continued.
Ordered accordingly.