Robertson, J.
If the case stated in the complaint had been made out in evidence, the plaintiff would have established a complete cause of action; but the deed to the plaintiff, on being produced, is found to contain no such covenant as is stated in that pleading. It simply reserved whatever rights had been acquired under the covenants contained in the instrument of September previous, relating to the party wall therein mentioned, and the right to *522 use the same, and continues their obligatory force. 'From that September instrument alone, th<| plaintiff derives his right to sue. The action is framed upon a supposed breach of some covenant, and the Referee has reported as matter of law that the defendant is chargeable with the breach of the contract so made by him, in preventing the use of his front wall by the plaintiff, and that the damages from such breach amount to one thousand dollars. This renders it necessary to examine what such covenants are: In the first place, there is no such covenant in the September agreement as to permit the plaintiff to use the party wall at all; there is one, to grant an easement in the premises on which it was to stand and render them the servient tenement, while the plaintiff’s lot was to be the dominant one. It was an executory contract to convey a right, not a mere covenant that such right might be exercised. Until that covenant was specifically performed, no right arose to use any part of the wall. It is true such instrument purported actually to grant such right, but the plaintiff had not then acquired the title to the land to which it was to become appurtenant. (Gale & W. Law of Easement, 5; Wolfe v. Frost, 4 Sandf. Oh., 72.) An instrument in the form of a covenant has been held to be a grant, (Barrow v. Richard, 8 Paige, 351; Birdsall v. Tiemann, 12 How. Pr. R., 551; Keteltas v. Penfold, 4 E. D. Smith, 122;) but I am not aware of any decision holding the converse. The agreement for the grant of the easement was substantially a part of the contract for the conveyance of the land, and should have been performed along with it. The easement would thus have been created, (Webster v. Stevens, 5 Duer, 553; Miller v. Platt, Id., 277;) and the plaintiff’s action could only have been for a disturbance of a vested right, not for violating a covenant. ■ Possibly, however, the plaintiff may have a right to unite an action for specific performance with one for injury done to the rights which would have been his, if the contract had been performed originally, on the principle that equity will consider as done what ought to have been done. This action *523 might, therefore, be maintainable on proper pleadings, which renders it necessary to examine the evidence and findings in this case.
Two things are observable as apparent on the face of the instrument of September, 1860; one is entire silence respecting the materials, structure or dimensions of the wall to be erected by the defendant, according to its terms, except its length and height, and, perhaps, four inches of thickness. Another is, that the easement was to be confined to that wall when erected, and cease with its existence. Had the defendant not built any wall, it would have been difficult to estimate what damages, under a contract so vague, the plaintiff would have sustained. Can he now recover damages to be measured by the character of the wall the defendant has actually put up, when he might have preferred not to have used such a wall as the defendant might have erected so as to be within the terms of the contract? Suppose the defendant had put up a wall twice the thickness of the present one, could the plaintiff have recovered damages commensurate with the increased stability which a connection of his front wall with such a wall would have given to his building ? Yet part of the evidence in this case was given to show the advantage to the plaintiff of tying the two walls together, in the stability of his house, which, of course, entered into the consideration of damages. Again, nothing is said in the agreement of the kind of house the plaintiff was to build. Was he at liberty to build a palace or any other costly building, and claim damages for injury to such a building by the defendant’s refusal to allow him the front of his for a support ? Yet the evidence was directed to the injury to the particular building; some of the witnesses testified, that the kind of connection of the walls desired by the plaintiff was only proper in case of a store, and estimates were made of losses of rent and the like, by reason of the appearance of the building in such case.
Again, the damages for breach of covenant, for not permitting the use of a wall, would be recoverable, but once.
*524 The estimate of the whole future injury must be then made. For disturbance of an easement the injury is continuous, and each successive act of hindrance is a subject of suit. (Blunt v. McCormick, 3 Den., 283.) The plaintiff in this case has been clearly awarded damages for injury for all future time, and particularly for that supposed to arise from a necessary and compulsory change in the character of his building.
The defendant had begun to build the wall in question before making the September agreement, and no time was limited therein for commencing its use by the plaintiff. The time of granting the easement being left entirely undetermined by the instrument, was apparently to be determined by the giving the deed or finishing the wall; probably the former, as provision is made for reimbursing the plaintiff for any expense to which he should be put in building, in case the title proved defective. It is therefore a matter of some doubt whether, until the time when the deed should be delivered and the plaintiff thereby acquired the easement, he could exact the use of the wall.
But even if the grant of such easement had been executed before the acts of the (defendant complained of were committed, it is by no means apparent from the face of the instrument of September, that either they or those set forth in the complaint would have been a violation of such easement. That was a right to use the wall in question in the erection of the plaintiff’s building, and for that purpose to insert beams to be kept there forever; such wall to remain a party, wall. The first branch would only imply a temporary use, were it not qualified by allowing the beams to remain. That, however, gives no right beyond the terms of the contract, and unless the lintel course could be construed to be a beam, the plaintiff had no right to insert it in the defendant’s wall.
It is not a matter of judicial cognizance that tying front walls together is a part of the use of a wall as a party wall, if that be part of the plaintiff’s right, and it requires to be established by evidence. It is not in evidence, in *525 tMs case, even how much of the comer of a wall belongs to a front and how much to a side wall when they unite. It must be a matter of practical construction. It would not follow that the plaintiff had a right to insert beams anywhere, because there was no limitation of the place. Unless a lintel course therefore be a beam within the meaning of the contract of September, the first part of the right granted has not been assailed. What the legal rights and burdens of a party wall are, or even its definition, is as yet scarcely settled definitively. The term is commonly applied to a wall, of which, if divided longitudinally, the two parts rest on land belonging to different owners, built solidly of materials not easily divided, or whose parts cannot be taken down without danger to the whole structure. In such c¡ase either party may remove the half on his own land, if it does not injure the other’s half, unless one or other owner has an easement by grant to have his neighbor keep up his half to support his own. (Sherred v. Cisco, 4 Sandf., 480; Eno v. Del Vecchio, 4 Duer, 53; 4 Man. & Gr., 714; 2 Car. & P., 250.) Walls, however, built entirely on one man’s land may acquire by grant the characteristics of party wall’s. (Brondage v. Warner, 2 Hill, 148.) In such cases the rights of the parties must depend exclusively on the character of the grant.
In so large and old a city as Hew York, to designate a wall as a party wall, may possibly, by usage, communicate to it certain attributes derived from the understanding and customs of builders and those dealing in the sale of real estate with buildings erected thereon. But in this case no distinct evidence was given that the term “party ivall” had acquired any peculiar significance beyond its ordinary meaning, although there was an attempt made to prove what, by custom, were the rights of parties interested in a “party wall.” The latter was abandoned in order to prove, by witnesses, under their understanding of the contract whatever that might be, what were the rights of each party under supposed customs. Ho interpretation of the agreement was given to them as a guide; conse *526 quently, as might have been expected, their testimony was widely variant. Most were influenced by the consideration that the agreement gave a privilege of inserting beams and chimney backs at the depth of four inches, with which the injury complained of had nothing to do, unless a lintel course was a beam within the meaning of the contract. Some read it as a permission to use the dividing wall in question generally as a party wall in the erection of the plaintiff’s building, although for that purpose it was limited to be used in a particular manner; many reduced the privileges given by the contract to one, compounded of all, to wit, to use the wall as a party wall in erecting the plaintiff’s building, and, as such, to insert beams and chimney backs penetrating to a certain distance; whereas, the two rights are kept separate in the original instrument. Eone testified that, according to any usage or understanding of trade, a right to cut into a part of a front wall which formed the continuation of a side wall, and was common to both where they united, followed the conversion of such side wall into a party wall. Such testimony might have formed an important. part of the case. What was actually received was improper, in allowing the witnesses to determine the legal effect of the agreement, and evidently had strong influence upon the mind* of the Beferee.
The right of the plaintiff to cut into such wall, as affected by custom, is the more important, as the place where it was to be done was not prescribed by the agreement. That his lintel course corresponded with the defendant’s was a mere matter of accident. He might have chosen to make it higher or lower, and he would have had the same right to cut into the brick work as he claimed in regard to the stone work. Indeed, from the testimony of some of the witnesses, the whole of such right would seem to have depended entirely on the kind of building he erected. As it was, the testimony was conflicting as to the right to cut into brick work. This right, too, of cutting into the defendant’s front wall, of course, would *527 have remained as long as the wall stood, and might be enforced at any time. ’
The witnesses on the trial divided on the question whether the right was the same when the ground on which the wall stood, or any part of it, was not conveyed but only a privilege to insert beams given; the weight of testimony being rather that in the latter case no such right existed. But no one undertook to testify how far a grantee might penetrate the wall in case it was merely made a party wall and nothing was said about its thickness. They seem to have assumed it was to be to the depth of one-half the thickness; evidently looking at cases where different parts of the width of -the wall stood on adjoining land of different owners. It should clearly have appeared whether the right of cutting off part of the defendant’s lintel arose from that of inserting beams, or followed the conversion of a wall into a party wall. It is impossible, therefore, from the testimony to discover of which right the defendant’s supposed delinquency was a violation. The Court is at liberty to determine from the evidence only whether it sustains the complaint. The evidence in this case does not sustain the charges, either that the defendant's acts were an obstruction to the use of the wall as a party wall, or that the junction of the plaintiff’s front wall with the front wall of the defendant was a use of the side wall as a party wall. It is true that the evidence tends to establish that such junction was useful to the plaintiff and rendered his building more stable, but unless the defendant agreed he should make it so by that means, it is immaterial.
Much of the evidence was employed in establishing that the mode in which the plaintiff built his house • was the best possible mode of securing it, if he could not fasten his front wall to the adjoining house. This is entirely immaterial. The plaintiff was also permitted to prove, as a measure of damages, the difference of value in his house, in case he had been allowed to use the adjoining front wall of the defendant’^. This I think was erroneous. The *528 damages should certainly be the same to every man on the same covenant. Non constat but the plaintiff built his house to enhance the damages. But if not, it was erroneous to prevent the defendant from proving what it would cost to place the plaintiff’s house in the same condition in which it would have been, had the defendant not interfered with him. The exclusion of the question to the defendant, whether he had ever prevented the plaintiff from tying the walls together, except by prohibiting his cutting out the four inches was clearly erroneous, since it went directly to contradict the testimony of the latter. Ho reason is furnished for its exclusion. Ho objection was made that it was leading and had been answered before, as the plaintiff’s counsel supposes. Evidence had been given to prove other interference by the defendant, and he had a right to deny it under oath. This would be sufficient cause for sending the case to a new trial, but the other reasons of more importance in the admission of testimony, require a re-examination of the cause.
The judgment must therefore be reversed, and a new trial had, with costs to abide the event, the order of reference to be discharged.
White, J.
The agreement and grant of the defendant, upon which this action is brought, and by the terms of which he agreed to build a wall of the depth of fifty feet, and of a height above the sidewalk sufficient for a four story house, on his own lot of land, adjoining the northerly line, of the plaintiff’s lot, and whereby, also, he granted to the plaintiff the right to insert the beams of his (the plaintiff’s) intended building four inches into said wall, and to insert therein two chimney backs to the same depth, and to maintain such beams and chimney backs so long as said wall should stand, covenanting that he would do no act tending to the destruction of said wall, and declaring that said wall should be a party wall between the houses which plaintiff and defendant were respectively about to build on their said two adjoining lots,—is very *529 vague in some particulars, such as the character or description of the plaintiff’s building.to be erected, and of the intended party wall; but still I think, that the instrument is capable of some reasonable construction and enforcement, and that an action might be maintained upon it in a proper case, at the suit of the plaintiff.
Taken in connection with the requirements of existing public law on the subject of the erection of buildings in the Oity of Few York, and the circumstances of place and business, the terms of the defendant’s covenant become sufficiently intelligible. The law requires that a party wall, or any exterior wall of a house in the Oity of Few York, of a height such as a four story house must necessarily be, must not be less than twelve inches in thickness, and it further requires, that the beams shall be inserted to the depth of four inches in .the wall, and that there shall be at least four inches in thickness of brickwork between the ends of the beams inserted in the wall upon each side. Erom these prevailing regulations, it can be properly deduced, that the party wall contracted for in this case, was to be at least twelve inches in thickness. And, as to the character of the plaintiff’s building to be erected, if the construction should be adopted, that the house should be one of a character not exceeding in value the best class or description of buildings erected in the immediate neighborhood mentioned in the contract, it would be a construction of which the defendant could not justly complain, as it would be a reasonable one, and the legal rules applicable in such a case would warrant, that any difficulty arising from ambiguity or absence of express terms, should be solved in a manner the least favorable to him. Such a construction should also be entirely satisfactory to the plaintiff, as it would secure to him indemnity, by furnishing him with a basis as favorable as he could reasonably demand for the calculation of damages, in case any damages should appear to have been sustained.
With respect to the rights acquired by the grantee under the defendant’s deed and covenant, I think, that the term *530 “party wall,” when used in such an instrument, and in its general ordinary signification, means a dividing wall between two houses, to be used equally, for all the purposes of an exterior wall, by both “ partiesthat is, by the respective owners of both houses. This use, in its full, unrestricted sense, embraces not only the use of the interior face or side of the wall, but also such use of it as is necessary to form a complete and perfect junction in an ordinary, good, mechanical manner between it and the other exterior walls of the house.
This, I think, is a correct definition of a “party wall,”' and of the rights which the grant of an unrestricted use of it confers upon the owner of the house of which it forms, or is to form one of the exterior walls; and the right of the grantee of such unrestricted use would be the same whether the wall stood one half upon the land of one owner and one half upon the land of the other, or stood wholly upon the land of the grantor of the unrestricted use. This right can, of course, be restricted or limited by the terms of the instrument granting it; but if no restrictive words are employed, and if the grant to an adjoining owner is in its terms simply a grant of a right to use a wall as a “ party wall,” then his right to its use for the purposes of an exterior wall for his building or erection, is as full and ample as is the right of the grantor to its use and benefits for the purposes of an exterior wall for his building.
Entertaining this view of the agreement of the parties, and of the force and meaning of the word “ party wall,” I am inclined to the opinion that the Beferee, upon the testimony received by him, came to a correct conclusion in this case, upon the question of a violation of contract by the defendant; and if, in every other respect, the proceedings before him were satisfactory, I would not feel disposed to order a new trial, either upon account of this conclusion, or of the amount of damages awarded And in this connection I will say, that the evidence given, by the plaintiff, to show that he had built his house as well *531 as it could have been built while deprived by the defendant of the right to connect his front wall with, or to rest it upon th,e party wall, appears to me to have been properly received; and, on the other side, that the testimony offered by the defendant with the intent to contradict that evidence, was improperly rejected.
As, however, the term “party wall,” and the rights which the owner or grantee of its use acquires by mere force of the employment of that term in a grant or covenant, have never, I believe, been judicially defined, and as a true understanding of them may be materially aided by intelligent and well directed testimony, which does not appear to have been produced upon the trial that has already taken place in this cause, the witnesses on the trial having been left without any authoritative interpretation of the contract by the Beferee, to aid them in the formation of the opinions which they were required to give, and also inasmuch as some testimony offered by the defendant was improperly excluded, especially the testimony of the defendant himself, on the question whether he had prevented the plaintiff from connecting Ms front wall with the party wall,—I fully concur in the propriety of reversing the judgment and ordering a new trial, with costs to abide the event, the order of reference to be discharged if either party desires it; the proceedings upon such new trial to be governed by the principles herein indicated.
Barbour, J.
I concur in the conclusion to which my brethren have arrived, upon the ground that the party wall which the defendant covenanted to erect, was to be used by the plaintiff only to the extent, and in the manner, particularly specified in the agreement; that is, he was to use it for the purpose of inserting the beams of his house to the extent of four inches,, and, also, of inserting two cMmney backs to the same extent. Fo other privilege to use the wall was covered by the covenant; anchors are not named, and are, therefore, excluded. Expressio unius est exclusio alterms. So, for the same reason, as to the right *532 claimed by the plaintiff to lap his front over or upon the wall. The fact, too, it naay also be said, that the defendant covenanted to erect the wall from the easterly side of the avenue, fifty feet in length, is quite inconsistent with the latter claim ; as a perpendicular wall, built upon the line of the street, would leave no space in its front extremity for the insertion of other bricks. He was bound by his covenant to build it flush with the line of the street, and the plaintiff accepted that covenant.
Judgment reversed, and a new trial ordered.