# SUPREME COURT.

## JAMES W. NASH agt. GEORGE KEMP.

*Party walls and their use — how they may be used in connecting the fronts of the buildings thereon — encroachment — injunction.*

A party wall may be used by the adjoining owners, for whose mutual benefit it was constructed, not only for the support of beams and for the construction therein of fire-places and flues, but also to form a complete and perfect junction, in an ordinary good mechanical manner, between it and the exterior walls of the house.

Opinion of WHITE, J., in *Fettritch* agt. *Leamy* (9 *Bosw.*, 525) approved.

Under the evidence it appears that a party wall is never brought up to the line of the street, but a space is always left in front of the wall, between it and the street line, for the front walls of the respective houses. The portion of the front resting on the wall is no part of the party wall.

Usage in building and connecting fronts with party walls considered. No general custom established. A limited number of exceptional cases do not establish a law or usage on the subject.

The adjacent proprietors own in severalty, the portion of a party wall standing upon their respective lots, but subject to its mutual use for the purposes for which the wall was built, so long as it shall endure (*Sherred* agt. *Cisco*, 4 *Sandf.*, 480).

When a party wall stands wholly or principally upon the land of one of the owners, the adjoining owner has no recognized legal right, growing out of his interest in the wall, to extend the front of his building thereon beyond the limits of his lot.

The land lying in front of a party wall, between that and the line of the street, is to be exclusively enjoyed by its owners, freed from any burden or easement growing out of a simple party wall agreement, and is to be occupied by the adjoining owners according to the boundary lines of their lots for the construction of their fronts.

The front of a party wall may be used to connect therewith the fronts of the adjoining houses, but such use does not necessarily oblige a party to go beyond his boundary line with his front.

It appears that by the use of anchors a party whose land adjoins the party

wall may safely connect, without encroaching on the other's land, his front therewith.

In the case under consideration there was no real necessity for the building of the plaintiff's front that he should have gone beyond the limits of his lot; within the two inches of his own land, lying in front of the wall, he might safely and in a good and workmanlike manner, have completed and secured the stone front or ashlar of his building therewith. In going beyond and to the center of the wall, he occupied, without legal right, six inches of the defendant's land, being in front of the party wall.

The mere fact that the defendant's grantor did not object, while the plaintiff was building and connecting the front of his house with the party wall, does not imply that she acquiesced in the appropriation of her, land lying in front of the wall to his use (*Christianson* agt. *Linford*, 3 *Robertson*, 215).

The only acquiescence which can be availed of, by means of which to establish a claim of title in lands, must have continued for the full term of prescription, or the full term prescribed in that behalf by the statute of limitation.

*Albert Cardozo*, for plaintiff.

*Joseph H. Choate*, for defendant.

VAN VORST, *J.* — The plaintiff was the owner of a lot of land on the easterly side of Fifth avenue, in the city of New York. Sarah A. Livermore, the defendant's grantor, was the owner of a lot adjoining the northerly line of the plaintiff's lot. The plaintiff being about to erect a building upon his land, entered into an agreement, in writing, with Sarah A. Livermore, in respect to the northerly wall of the building to be erected by him, in which it was agreed that the northerly wall of such building, so to be erected, should be constructed partly upon the land of the plaintiff, and partly upon the land of Sarah A. Livermore, that is to say, two inches of the wall should be upon the land of the plaintiff, and fourteen inches thereof upon the land of Sarah A. Livermore, and should be a party wall between the said building so to be erected by the plaintiff, and any building which might be erected upon the land of Sarah A. Livermore. The

·wall in question was to be built by the plaintiff, at his individual cost, in a substantial manner. He agreed to build it sixteen inches thick throughout its entire length and height. It was to be seventy feet in length along the north side of the plaintiff's building, and to be at the least four stories high. It was agreed that Sarah A. Livermore and her assigns might, without cost or expense to her or them, use "the party wall so to be constructed," whenever she or they should erect any building upon her land.

The plaintiff proceeded at once to erect his building, and completed the same, including the north wall in question.

Although there was some conflict in the evidence in regard to the exact location of the south line of the northerly or party wall, yet I am persuaded that the testimony most satisfactory and reliable establishes that the same runs two inches south of the north line of the plaintiff's lot, through its entire length, and in this regard conforms to the agreement. .

The plaintiff built the front wall of his house at the same time with the northerly wall, except carrying the latter up one story ahead, the brickwork of the two walls constituting, in fact, one structure, blocked and toothed in at their junction at the northwest corner of the building. The front wall was faced with brown stone. The ashlar was anchored to the brick wall behind, as that went up.

The brickwork of the front wall, to which the ashlar was anchored, at its junction with the northerly wall, although toothed and blocked in, was further secured thereto, by means of anchors firmly imbedded in the brickwork, of which there are two in each story, about eight feet apart. These anchors run diagonally from about the center of the northerly or party wall to the center of the front wall. The object of this further security being to tie and hold the two walls more firmly together. The front wall of the plaintiff's house, exclusive of the ashlar, is about fifteen inches in thickness. The northerly or party wall was constructed of the agreed thickness up to a point ten inches from the line of the avenue,

where, as to the north half of the wall, the same terminated. The south half, however, was continued, and interlaced with the front wall, as already observed, until within about four inches of the street line, leaving a space of four inches between it and the front line for the ashlar.

By this method of construction there was a jog in the north-west corner of the wall, ten inches in depth, and eight inches in width, formed by the intersection of the face of the north half and the north line of the wall, as carried by the plaintiff toward the street line of the lots in front. This jog was left by the plaintiff, extending from the foundation to the top of the wall, to be occupied by the owner of adjoining lots, in connecting his front with and supporting the same thereon. After the completion of the plaintiff's building, the defendant acquired title to the land of Sarah A. Livermore, and erected thereon a building known as the " Buckingham Hotel." When the defendant came to connect his front wall with the party wall, he complained to the plaintiff that he had occupied, with his front wall, including the ashlar, more space of the party wall than he was justly entitled to.

The claim of the defendant being that, as to his front wall, the plaintiff was entitled to occupy or overlap the party wall to the extent of two inches only, and up to the northerly line of his lot, whereas he had covered the same with his front wall to its center, and had, in this manner, appropriated to himself a frontage of six inches of the defendant's land, lying in front of the party wall, and up to the line of the avenue. The defendant commenced to cut away six inches of the plaintiff's ashlar, lying immediately south of the center line of the party wall, when he was restrained by an injunction order, obtained in this action, and the plaintiff, by his complaint, and upon the trial, asks that it be adjudged that he, the plaintiff, is entitled to use the front of the said party wall up to the center line thereof, and that the defendant be enjoined from interfering with the plaintiff in such use. It

may be observed that the plaintiff, by the allegations of his complaint, substantially construes the agreement between himself and Sarah A. Livermore, as an undertaking on his part to·build a " party wall."   Although it was the northerly wall of his building which was to be constructed partly upon the land of the defendant's grantor, yet the agreement provides that the same should be a party wall between the plaintiff's building and any building which might be afterward erected on the adjoining lot.

The plaintiff claims, in his complaint, to have built the "party wall" as agreed, and to have used eight inches of its front, and up to the center line thereof with the front of his building.   He would appear to concede that the party wall proper, which he agreed to build, was not itself to extend in front to the street line of the lots.

A distinction is clearly recognized, by the plaintiff himself, between the party wall and that portion of the front of his house which is built into, or rests upon it, and, in his argument, the counsel for the plaintiff urges " that, if the defendant is right, he may cut away not only the ashlar, but through the brick wall of the plaintiff's house down to the front line of the party wall."   And the plaintiff also claims to have built the wall sixteen inches thick throughout its entire length and height.   Yet, as to the north half thereof, he rested when within ten inches of the front line of defendant's lot, showing, by his action, that he regarded such portion of the northern wall of his building, or party wall, as ending there, and that the angle or jog in question, left by him, was to be filled with the defendant's front wall.

The evidence clearly establishes that, in building party walls in the city of New York, the front of the wall is never brought close up to the line of the street, but that a space is always left in front of the wall, between that and the street line, for the front walls of the respective houses, including the ashlars, where stone is used as a facing.

And the evidence further shows that the use which is

Nash agt. Kemp.

made of a party wall in the construction of the adjoining houses is for the insertion and support of beams therein, and for the construction therein of fire-places and flues, and for securing the front and rear walls by the various means of diagonal anchors, which seem always to be used, and by toothing in where the walls are constructed together. And it may be urged with good reason that a party wall may be used by the adjoining owners, for whose mutual benefit it was constructed, not only for the support of the beams and for the construction therein of fire-places and flues, and other acknowledged uses, but also " to form a complete and perfect junction, in an ordinary good mechanical manner between it and the exterior walls of the house " (*Fettretch* agt. *Leamy*, 9 *Bosw.*, 525, *per* WHITE, *J.*).

Commonly, party walls are built and rest equally upon the lands of the adjoining owners, and in such cases no question could reasonably arise, in the absence of express agreement to the contrary, but that each owner might use the same equally for all the purposes for which such wall was designed. When a party wall is thus built, resting equally upon the lands of the adjoining proprietors, it is commonly, in the first instance, constructed at their joint expense; or, if built by one owner at his individual expense, it is usually so constructed under an agreement with the adjoining owner, that when he shall come to use the wall for the purpose of supporting his building, he shall compensate the other for one-half of the expense of building the wall. But to be a party wall, and vested with all its attributes, it is not absolutely necessary that it should rest equally on the lands of the adjoining owners.

In *Fettretch* agt. *Leamy* (*supra*), it is said by ROBERTSON, J., that " what the legal rights and burdens of a party wall are, as even its definition, is not yet scarcely settled definitely. The term is commonly applied to a wall of which, if divided longitudinally, the two parts rest on land belonging to different owners, built solidly of materials not easily divided,

or whose parts cannot be taken down without danger to the whole structure. In such case, either party may remove the half on his own land if it does not impair the other half, unless one or the other has an easement by grant to have his neighbor keep his half to support his own. Walls, however, built entirely on one man's land may acquire by grant the characteristics of a party wall."

LAWRENCE, J., when this case was before him, on the motion to continue the injunction, in his opinion, says: "Whether the easement created permitted the plaintiff to extend the ashlar of his building over one-half of the width of the front of the party wall, does not seem by the authorities to have been clearly determined. The case must necessarily turn upon the definition which is to be given to the term party wall as used in the agreement." And again : "If that term has any peculiar signification in this city, that fact can only be determined by competent evidence, to be given on the trial."

It was with a view to ascertain whether any general usage or custom prevailed in the city of New York, as to the extent the adjoining owners might occupy the front of a party wall, or whether any limit was established, to which the fronts or ashlars of the respective houses might be carried on its face, when the party wall stands more upon one lot than the other, that the testimony of experts and builders was received on the trial. The inquiry was also extended to the practicability of building the front wall of the plaintiff's house, including the ashlar, without extending the ashlar and brick work beyond the limit of plaintiff's lot, and over the space of six inches of the defendant's land lying in front of the party wall, between its center and the north line of the plaintiff's land.

The cases appear to be exceedingly rare where the party wall rests more on one lot than the other. They are of unexceptional occurrence. The observation of the architects and builders, called by the defendant, was very limited, confined substantially to their individual experience in building.

Nash agt. Kemp.

So much was this the case that it cannot be affirmed with certainty that any general, well known and acknowledged usage prevails on this subject. The most that can with safety be urged is, that each witness narrated his own experience, which in every case was limited. And what was actually done in such cases must necessarily have been done in pursuance of some special understanding or agreement between the owners of the adjoining premises. In one or more of the cases spoken of, the wall stood wholly on one lot, to which the adjoining owner acquired a right to connect his front by means of anchors. In some others the wall did indeed stand unequally on two lots, and the witnesses testified that they did observe, and limited themselves by the boundary lines of the lots in erecting the fronts. But the agreements under which such walls were constructed are not in evidence, nor do the rights of the respective owners to their specific use clearly appear. It is true that some of the witnesses did, in a general way, testify to what they understood to be a usage on the subject, which restricted the respective owners to the boundary lines of their lots in erecting their fronts upon division walls. But a further examination showed that the opinion of these witnesses was based upon their own practice in such cases, or observation of instances within their knowledge. But as these witnesses, in cases in which they were acting, were agents for others whose rights were presumably fixed and definitely settled by some agreement between their principals and others, such experience or knowledge could scarcely be held to establish a usage on the subject of such force as to determine the controversy between these parties.

In addition the plaintiff introduced witnesses, who testified that they had never heard, and had no knowledge of any such custom, usage, or rule, in architecture or building.

A careful consideration of the whole evidence on this branch of the case fails to disclose a custom so general as to be notorious, in respect to which all must be presumed to contract. A limited number of instances cannot make a general cus-

tom, nor conclusively govern the court in coming to a judgment.

But it would seem, on principles of reason and justice, that the plaintiff, who had individually sustained the whole expense of the construction of this wall, sixteen inches in thickness, although principally standing on the adjoining lot, should have been allowed of its front sufficient space at least to secure the exterior walls of his building thereto in a firm, substantial and workmanlike manner. And this right he had good reason to conclude he had acquired by his agreement with Sarah A. Livermore, by which it was agreed "that the northerly wall of said building, so to be constructed," should stand partly upon his land, and partly upon her land. There is a conflict in the evidence as to whether or not the plaintiff could have properly and substantially connected the brickwork of his front with the party wall, if limited to two inches of its surface for such purpose.

Witnesses for the defendant testify, that by means of anchors it could have been done; witnesses for the plaintiff leave it at least doubtful whether it could have been in an entirely secure and good and workmanlike manner. The plaintiff's front wall, exclusive of the ashlar, as already stated, is fifteen inches in thickness, but it is blocked and tongued into the party wall, making a continuous, firm and durable work. But if limited absolutely to two inches only of the front of the party wall, a system of blocking could scarcely have been adopted within such contracted space; the brick, from their width, must needs go beyond, and the anchors, to approximate even to security, must have been of such length as that the ends thereof, imbedded in the party wall, must have extended to at least its center.

The precise question as to how much of the face of the wall in question, regarded as a party wall, the plaintiff might use to connect therewith his front, has not been decided by any case to which reference has been made by the counsel for the parties herein.

The law respects, and has been careful to conserve, the proper rights of the adjacent owners in a party wall. Neither of the parties entitled to its support can remove it, nor render it insufficient to uphold the buildings of the other upon it.

As long as the same is capable of answering the purposes for which it was erected, the owner of either part may under-pin the foundation, sink it deeper, as the occasion may require, and increase its thickness within the limits of his own lot, or its length or height, if he can do so without injury to the building on the adjoining lot. He cannot pare off the part of the wall on his own land so as to render the remainder insufficient or unsafe, or excavate under the wall, upon his own premises, to its permanent injury.

The foregoing conclusions and others of a kindred nature, may be found in the following cases and books: *Eno* agt. *Delvechio* (4 *Duer*, 53, *and* 6 *Duer*, 17); *Sherred* agt. *Cisco* (4 *Sandf.*, 480); *Webster* agt. *Stevens* (5 *Duer*, 553); *Brad-lee* agt. *Christ's Hospital* (4 *Man. & Gran.*, 714, 761); *Partridge* agt. *Gilbert* (15 *N. Y.*, 601); *Philips* agt. *Boardman* (4 *Allen*, 147); *Brindage* agt. *Warner* (2 *Hill*, 145). *Washburne on Easements* treats of the subject at length, and gives the result of what has been adjudicated (*Page* 454, *et seq.*, *marg.*).

The terms "common" and "mutual" are frequently employed in the cases to designate the wall in question, and measurably to define the rights of the adjacent owners. The better opinion seems to be that the wall is not common, in the legal acceptation of that term; but that, in fact, the adjacent proprietors own in severalty the portion of the wall which stands on their respective land, subject, however, to its use as a party wall, and that they are mutually entitled to its support for the purposes for which it was erected, so long as the wall shall endure (*Sherred* agt. *Cisco, supra*).

The agreement under which the wall was built was careful to provide "that no part of the land upon which the wall or

any extension thereof should be constructed, shall thereby become vested in either of the parties" to the agreement. There are two cases in the superior court of the city of New York, which deserve consideration. The case of *Ogden* agt. *Jones* (2 *Bosw.*, 685), was decided at special term, Wood-ruff, J. Although the term party wall is not used in describing the wall, yet the same was used as such. The wall appears to have stood wholly on the land of one of the proprietors, yet there was reserved to the adjoining proprietors " one-half of the wall" erected or to be erected on the westerly side of the premises. Each was to pay one-half the expense of keeping up the wall. The adjoining owner used the wall for the support of his building. He sought to carry his front over " one-half of the wall," and for that purpose claimed the right to cut away six inches of the front of the adjoining owner, which covered the entire face of the wall. The judge decided that he could not extend any part of his front over the land of the adjoining owner. It is true that the wall had been used by the party on whose land it stood for a period of sixty years without disturbance, and that there had been an acquiescence for that period in the construction which he had given to the agreement, by which one-half of the wall was resigned to the adjoining owner, which was of itself sufficient to restrain the latter from building upon any part of the front of the wall, and confine him to its use as a support to his house, without interfering with the plaintiff's front. *Fettretch* agt. *Leamy* (*supra*), was the case of a party wall which also appears to have stood wholly on the land of one of the adjoining owners. The defendant, upon whose lot the wall was to stand, began to build and had completed the side and front walls of his house, so far as to have finished a brown-stone lintel on the first floor, and extended the same to the line of the plaintiff's lot. The plaintiff then undertook to cut off four inches in length of such lintel in order to have the lintel of his front wall extend that distance beyond the

dividing line of the lots and lap over that part of the defendant's building which belonged, in common, to its front and side walls. The defendant resisted the attempt. The defendant also forbade the plaintiff putting anchors in his front wall and interlocking the bricks of the front walls of both buildings at their junction.

ROBERTSON, J., said: "It is not a matter of judicial cognizance that tying front walls together is a part of the use of a wall as a party wall." WHITE, J., as already observed, said that the use of a party wall, "in its full unrestricted sense, embraces not only the use of the interior face or side of the wall, but also such use of it as is necessary to form a complete and perfect junction, in an ordinay good mechanical manner, between it and the other exterior walls of the house." BARBOUR, J., in the same case, limited the plaintiff to the use of the wall for the purpose of inserting therein the beams of his house and chimney backs, as by the party wall agreement, as he thought its use was substantially so limited.

These cases, dependent upon their peculiar facts, do not necessarily determine what should be adjudicated in this action. They seem, however, to establish that under agreements in which, in the one case, the wall, although standing wholly on the land of one of the proprietors, the one-half thereof being excepted and reserved to the adjoining proprietor, but the whole maintained at their joint expense, and in the other case, where a party wall stands wholly upon the land of one, the adjoining owner and party in interest in the wall has no recognized legal right growing out of his interest in the wall to extend the front of his house thereon beyond the limits of his lot, unless such right may be embraced in what WHITE, J., in the latter case, says in regard to the use of the wall to form a necessary connection between it and the other exterior walls of the house.

A party wall proper, under the evidence in the case under consideration, never advances to the line of the street; but. the space between it and the street line is fixed by no certain

rule. It varies according to what may be required for the fronts of the houses. The land covering this space should be exclusively enjoyed by its owners, freed from any burden or easement growing out of the party wall agreement, and be occupied by them according to the boundary lines of their lots for the construction of their fronts.

The enlarged right suggested by WHITE, J., can be determined by no rule, in any given case, except necessity. I am inclined to the opinion that a party wall should subserve the ends suggested by him. But such further use does not necessarily oblige a party whose line adjoins the wall, and that was the case before him, to go beyond his boundary with his front, and so encroach upon the land of the adjoining owner, not covered by the party wall. It appears that by the use of anchors a party, whose land adjoins the wall, and is bounded by it, may safely connect his front thereto.

With regard to the north half of the party wall under consideration, its front was fixed by the plaintiff ten inches east of the street line. The south half was continued and built into the front wall, so that it is difficult to determine where the former ends and the latter begins. It is one solid brickwork, forming the northerly wall of the plaintiff's building. But the brickwork ended, leaving a space of four inches between it and the street line for the ashlar, which constitutes the real front, and out of which this controversy has in fact arisen. The south half of the wall ended at least with the brickwork. There was no real necessity, for the building of his front of brown-stone, that the plaintiff should have gone beyond the limits of his lot. Within the two inches of the face of the party wall, the plaintiff could securely, and in a good and workmanlike manner, have completed and secured his ashlar, anchored as it was to the brickwork behind, and within that space it must be held that he should have limited himself. In going beyond and to the center of the wall, he used and occupied, without legal right, six inches of the front of defendant's land.

Nash agt. Kemp.

But the plaintiff claims that Sarah A. Livermore, while she owned the land, made no objection, but, on the other hand, acquiesced in the use made by the plaintiff of the party wall with his front.

There is no evidence that the defendant's grantor had actual knowledge of the manner in which the plaintiff constructed the wall or appropriated its front. Under such circumstances, her failure to object and her silence do not necessarily imply acquiescence.

It is true that her brother, who had, on her behalf, caused the party wall agreement to be drawn, on several occasions passed by the building when in progress of erection. But he gave no particular attention to the subject. He had, indeed, a general charge of his sister's business, but had no particular duty in the premises after the party wall agreement was drawn. But a failure to object, even, on the part of the defendant's grantor could give the plaintiff no right to occupy her ground with the ashlar of his building.

A person encroaching upon the land of another by the overlapping of a wall cannot resist the claim of the latter on the mere ground that the owner was silent during the progress of the encroaching structure; and the owner is not estopped by his silence from recovering his possession (*Christianson* agt. *Linford*, 3 *Robinson*, 215).

The learned counsel for the plaintiff urges that the defendant knew, in judgment of law, that plaintiff had so constructed his house when he bought from Sarah A. Livermore, and that, after such construction had been acquiesced in, the plaintiff's possession should not be disturbed.

There may be force in the suggestion, so far as it applies to the actual location and building of the northerly wall of the plaintiff's house under the party wall agreement, and the extension of the brickwork thereof toward the avenue, beyond the line left for the defendant's front.

But it has no just application to the plaintiff's encroachment upon the defendant's lands with his ashlar, which is

no part of the northerly or party wall. Besides, the only acquiescence which can be availed of, by means of which to establish a claim of title or interest in lands, must have continued for the full term of prescription, or the full term prescribed in that behalf by the statute of limitation. Nor is the conveyance from Sarah A. Livermore void as to the plaintiff's claim, under the provisions of the Revised Statutes (1 *N. Y. Statutes at Large* [*Edmonds' edition*], *page 690, sec.* 147).

The plaintiff's claim is not under a title adverse to that of defendant's grantor. In fact, plaintiff has not and could not make any claim of title to the land. The extent of his claim is an easement in the land in question for the support of his front upon a party wall, arising by implication (*Crary* agt. *Goodman,* 22 *N. Y.,* 174; *Laverty* agt. *Moore,* 33 *N. Y.,* 658).

From an examination and consideration of the whole case, it does not appear that the plaintiff has established a claim which entitles him to the interference of a court of equity, or to the granting of the relief demanded.

The removal of six inches of his ashlar will, as the case shows, entail upon the plaintiff expense, and will necessitate the alteration of his stoop and portico, but it can be done without serious injury to the walls of his building.

The annoyance and expense to the plaintiff, however, furnish no satisfactory reasons why this court should, by its order of injunction, restrain the defendant from the exercise of his right to the enjoyment of his property.

The plaintiff extended his ashlar over the space in question, without doubt, in the honest belief that he had a legal right to do so. But if such claim be ill founded, as it is held to be, he should be willing to recede to the line of the lot with his ashlar, or if practicable, adjust the subject in dispute with the defendant, and secure a legal right to the maintenance of his front, as it now stands.

It may, in conclusion, be observed, that although the party

Nash agt. Kemp.

wall was built by the plaintiff at his sole expense, yet it stands principally on defendant's ground; that by such method of construction the interior capacity of the plaintiff's house is largely increased, and the defendant's decreased in the same degree.

And that whatever the plaintiff gains by the extension of the front of his house over the space in question is to the loss of the defendant's front.

The complaint of the plaintiff should be dismissed.

# ERRATUM.

In the case of *Havens* agt. *Klein*, *ante p*. 95, at the end of the head-note read in addition thereto, "; where the common owner of both first conveyed the latter, with the appurtenances."