BENJAMIN F. AVERY, Respondent, v. THE EMPIRE WOOLEN
COMPANY, Appellant.

The parties were adjoining proprietors. A stream of water ran across
plaintiff's lands northerly upon and across defendant's lands below. Near
the line was formerly a butternut tree, the stump of which remains;
the natural channel of the stream is on the east of the stump, but in times
of high water, some of the water of the creek flowed on the west side.
Plaintiff's predecessor constructed and plaintiff maintained an embank-
ment upon his land which caused the water of the creek in its ordinary
stages as well as in times of floods to flow on the west side of the stump.
Defendant thereupon constructed an embankment which prevented any
water from flowing on said west side and turned it to the east side.
*Held*, that plaintiff had no right of action because thereof; that defendant
had the right to dam against the water so turned upon his land, and if in
order to protect himself from the consequences of plaintiff's acts he ob-
structed the flow of flood water plaintiff could not complain.
When there has been a practical location of the dividing line between the
lands of adjoining owners and a long acquiescence therein, the line so
established will not be disturbed.
Plaintiff also owned land upon the east side of the creek. The deed under
which he claimed described the land as "beginning at a willow tree at
the north-west corner of the premises near the water of the Sauquoit
creek, thence southerly along the east bank of said creek," etc. The
said tree was sixty-three links from the creek. Defendant owned up to
plaintiff's line; and, claiming the line should run southerly from the tree
until it strikes the east bank of the creek, dug a channel on the land
east of and between a line thus run and the creek. Plaintiff claimed
that his north line ran west until it struck the east bank of the creek.
*Held* (ANDREWS, J., dissenting), that defendant's claim had the best
foundation,
But *held*, that if the channel was upon plaintiff's land, there was no ground
for equitable relief; as in that case defendant committed a trespass and
plaintiff's remedy was an action at law to recover damages.

(Argued November 9, 1880; decided November 19, 1880.)

THESE were cross appeals from an order of the General
Term of the Supreme Court, in the fourth judicial depart-
ment, affirming in part and reversing in part a judgment
herein in favor of defendant entered upon a decision of the
court on trial at Special Term.

The nature of the action and the facts are set forth sufficiently in the opinion.

*C. D. Adams* for appellant. Plaintiff's claim that defendant, by various acts, set water back upon his premises was one single cause of action. (*Wolstenholme* v. *Wolstenholme File Mfg. Co.*, 64 N. Y. 272; *Story* v. *N. Y. & H. R. R. Co.*, 6 id. 85.) Both parties having acquiesced in the creek running in the west channel for seven years there was an implied agreement that that was its natural channel. (*Jones* v. *Turner*, 46 Barb. 527, 533; *Woodbury* v. *Short*, 17 Vt. 387.) The words in the description "thence along the bank of the pond" mean the pond at low water. (*Halsey* v. *McCormick*, 3 Kern. 296; *Child* v. *Starr*, 4 Hill, 369.) The plaintiff's deed conveyed to him land to the bank of the creek at low water charged with the easement of overflow. It was trespass to do any thing more than overflow as allowed by the deed. (3 Washb. on Real Estate [3d ed.], 333, 349, 350; *Bradford* v. *Cressey*, 45 Me. 9; Angell on Water-courses, §§ 11, 36, 53; *Den.* v. *Wright*, 1 Pet. C. C. 64; Girard on Titles to Real Estate [2d ed.], 496; *Lessee of Wyckoff* v. *Stephenson*, 14 Ohio, 13; *Lamb* v. *Rickets*, 11 id. 311.) When a description reads thence to a monument on the bank of the stream, the line extends to or beyond the monument. (24 Wend. 451; 14 Mass. 150; 23 Vt. 319; 9 Cush. 492; 2 Ohio, 425.) The right to flow the premises with water means the right to raise the dam to any height, notwithstanding, by such increase of height, the water flows back upon the premises; it does not give the right to excavate the premises and turn thereby water into the pond. (2 Washb. on Real Estate [3d ed.], 321.) The right of flowing land or of making back-water is an incorporeal hereditament. (Angell on Water-courses, § 387.) To constitute an adverse possession such as will render void a conveyance by the rightful owner, the possession must be under claims of some specific title and not merely under claim of title. (*Crary* v. *Goodman*, 22 N. Y. 170; *Hallas* v. *Bell*, 53 Barb. 247; 22 N. Y. 170; *Bowie* v. *Brake*, 3 Duer 35; [Court of Errors],

*Livingston* v. *Peru Iron Co.*, 9 Wend. 511.) Monuments define the boundaries as between the parties agreeing to them, and all claiming under them. (*Dryden* v. *Jepherson*, 18 Pick. 285; *Makepeace* v. *Bancroft*, 12 Mass. 472; *Davis* v. *Rainsford*, 17 id. 211; *Allen* v. *Bates*, 6 Pick. 460; 13 id. 267.) The boundary fixed by the monuments is to be construed to be the true line of ownership, and not that of occupancy or inclosure, if the latter be other than the true dividing line. (3 Washb. on Real Estate, 408; *Northrop* v. *Sumney*, 27 Barb. 196; *Cornell* v. *Jackson*, 9 Metc. 154; 2 Waterman on Trespass, § 717, p. 107; *Burrill* v. *Burrill*, 11 Mass. 293.) When an erroneous boundary line is agreed upon between adjoining owners, acquiescence therein, short of twenty years occupation, in accordance therewith, would not make it the true line, nor prevent original owners or their grantors from claiming a different line. (*Smith* v. *McNamara*, 4 Lans. 169; *Jackson* v. *McConnell*, 19 Wend. 175; *Corning* v. *The Troy Iron and Nail Factory*, 44 N. Y. 577.) There must be a real substantial inclosure, an actual occupancy, a *possessio pedis* which is definite, positive and notorious, to constitute an adverse possession when that is the only defense, and that is to countervail the legal title. A brush fence is not sufficient. (*Jackson* v. *Schoonmaker*, 2 Johns. 230; *Becker* v. *Van Valkenburg*, 29 Barb. 319; *Doolittle* v. *Tice*, 41 id. 181.)

*John D. Kernan* for respondent. The fence having been maintained where it now stands for at least forty years constitutes a practical location which is conclusive, and will not be disturbed. (*Baldwin* v. *Brown*, 16 N. Y. 359.) Again, when Millard deeded to the plaintiff in 1871, defendant was in possession of the land in dispute, claiming under a title adverse to Millard, the grantor. Hence, the deed to plaintiff is void, and he cannot contest this question. (2 R. S. [6th ed.] 1120, § 108; *Howard* v. *Howard*, 17 Barb. 663; *Crary* v. *Goodman*, 22 N. Y. 170.) Any person can erect any work to prevent the old course of a stream from being changed. (Angell on Water-courses [7th ed.], § 333; *Farquharson* v. *F.*,

3 Bligh. Par. [N. S.] 421; *Tuttle* v. *Scott*, 5 Am. Rep. 301;·
*Jones* v. *Turner*, 46 Barb. 533.) No one can interfere with a
stream or channel for his own advantage, to the detriment of
owners above or below. (Angell on Water-courses [7th ed.], §§
80, 95; *Baley* v. *Shaw*, 6 East, 208; *Brown* v. *Best*, 1 Wils.
174; *Sackrider* v. *Beers*, 10 Johns. 241; *Van Holsen* v.
*Coventry*, 10 Barb. 318; *Buddington* v. *Bradley*, 10 Conn.
213; 17 id. 288; 13 id. 303; *Corning* v. *Troy Iron and Nail
Factory*, 40 N. Y. 191.) One whose lands are inundated by
the acts of his neighbor may not only recover damages, but he
can defend his land against encroachments, and if any conse-
quences detrimental to the wrong-doer result from this course,
they afford a legal ground of complaint. Such acts are nui-
sances, which may be abated by the party injured. (Angell,
§§ 332, 389 to 394; *Parker* v. *Rochester & Syracuse R. R.*, 17
N. Y. 283.) A right as to water, or a water-course, can only
be conferred by deed. (Angell, §§ 168, etc., 286, etc., 387.)
Acquiescence in a changed channel must be for many years,
and is like a parol license, and upon the strength of the change
improvements and expenditures must have been made. (Angell,
§ 372, etc.; *Cook* v. *Pridgew*, 12 Am. Rep. 582; *Corning* v.
*Troy Iron and Nail Factory*, 40 N. Y. 205, 216.) Defend-
ant's acts and acquiescence here would amount to a parol
license, at most only good until revoked. (Angell on Water-
courses, §§ 295, etc., 387.) The doctrine of acquiescence has
no application to the change of a stream produced by the
wrongful act of one's neighbors. (*Jones* v. *Turner*, 46 Barb.
533.)

EARL, J. The parties to this action own adjoining lands in
the county of Oneida, and the Sauquoit creek runs northerly
through the lands. Each party owns and uses a water-power
upon the creek, that of the defendant being northerly of the
plaintiff's and lower down. The plaintiff commenced this
action in the fall of 1874, alleging in his complaint that the
defendant had raised the dam across the creek upon its land so
high as to set the water back into the tail-race upon his land,

thus injuring his power; that it had constructed an embankment across the main channel of the creek, a large portion of which was upon the land of the plaintiff, and that it has also dug a new channel through land owned by the plaintiff for the waters of the creek; and the claim is, that by all of these acts the defendant has raised the water in the creek and caused it to set back into the tail-race of the plaintiff, and relief is demanded substantially as follows : First, that the defendant be adjudged to lower its dam to such a point as will prevent any back-flow into plaintiff's tail-race. Second, that it be adjudged to remove the embankment across the main channel of the creek, and to restore to the plaintiff his lands covered by the embankment, and the main channel to its natural and ancient depth. Third, that it be adjudged to fill up the channel dug through plaintiff's land, and restore the stream to its natural and ancient channel and depth. Fourth, that it be adjudged that the defendant be perpetually and forever enjoined from flowing the water back into the plaintiff's tail-race by any means, or causing the same to be done; and there was a general prayer for other and further relief. The cause was put at issue and brought to trial at a Special Term. It was there found that the defendant did not so raise its dam as to set the water back upon the plaintiff's land; that a division fence crossing the creek between the lands of the parties is upon the true division line, and that the fence has been maintained where it now is, without change, for more than twenty years ; that the embankment complained of was constructed by the defendant northerly of the fence upon the land of the defendant, and not across any rightful channel of the creek, and that the new channel dug by the defendant was upon its own land; and judgment was given against the plaintiff. He appealed to the General Term, and there the judgment was affirmed, except as to the finding as to the division line between the parties, and as to the finding that the new channel was upon defendant's land; and as to such findings the judgment appealed from was reversed upon both the law and the facts, and a new trial granted. Both parties then appealed to this court.

The most important question in the case is, whether defendant's dam set the water back upon plaintiff's land. That is a question of fact which was much litigated at the trial. The plaintiff sought to compel the defendant to lower its dam constructed upon its own land, and the *onus* was upon him to show that the dam caused him injury. It was not sufficient for him to leave the matter in doubt. Upon this point engineers and others were called upon both sides, who testified to their measurements and observations. It is far from true that it was conclusively shown that the dam did set the water back into plaintiff's tail-race. There was much evidence tending to show that it did not, and upon the whole case the judge, at Special Term, was satisfied that it did not. His decision upon this point having been sustained at the General Term, is not open for review here. It can scarcely be disputed that there was conflict in the evidence, and a minute reference to the facts now would, therefore, serve no useful purpose.

Near the line between the lands of the parties there was formerly a butternut tree, the stump of which is still there. The claim of the plaintiff is that the main natural channel of the creek was formerly, and is rightfully still, on the west side of that stump, and the defendant claims that it is on the east side of the stump. There was much evidence given upon this disputed point, and the court found thereon in favor of the claim of the defendant. This finding, based upon conflicting evidence, was not disturbed by the General Term, and hence concludes us.

It is undoubtedly true that in the time of high water and floods, some of the water of the creek also flowed on the west side of the stump, and that the embankment erected by the defendant now prevents any water from running on that side. The plaintiff could complain of this interference with the natural flow of the water, if it did him any damage. But before this embankment was constructed, the plaintiff's predecessor had constructed, and the plaintiff had maintained an embankment upon his land, which caused the creek in time of ordinary water, as well as in time of floods, to run around the

west side of the stump; and against the water thus turned upon his land the defendant had the right to dam, and if, in order to protect itself against the consequences of plaintiff's wrong, it obstructed the flow of flood water, as well as the ordinary flow, from passing around the west side of the stump, he is not in a position to complain, as it is consequent upon his own wrongful act. (Angell on Water-courses, §§ 332, 389–394; *Packer* v. *R. & S. R. R. Co.*, 17 N. Y. 283.) We see no reason, therefore, to differ with the General Term, so far as it affirmed the judgment of the Special Term, and we will pass to the consideration of those parts of the General Term decision reversing the judgment of the Special Term, from which the defendant has appealed.

The defendant claims that the easterly and westerly line between the lands of the parties is where the fence stood, about six feet southerly of the butternut stump. The plaintiff claims that the line is about one foot southerly of the stump, and it was so held at the General Term, reversing the finding of the Special Term that the fence was upon the line. We are constrained to differ with the General Term. The evidence as to the true location of this division line is far from conclusive either way. There is much conflict in the evidence, and doubt and uncertainty as to the location. But it is undisputed that the fence had stood where it was at the commencement of the suit for many years, and the plaintiff had the burden of showing that it was not upon the dividing line between the parties. The doubt, uncertainty and conflict in the evidence operates to his disadvantage. There was no evidence showing when this division line was first established. The first we know any thing about it, prior to 1830, there was a fence upon that line, and the great preponderance of the evidence is that the fence has never been changed. It has been reconstructed and repaired always, as I think, upon this same line. In 1859 the fences between these lands were divided, and the portion assigned to each owner, which he was to maintain, and the fences have been maintained in pursuance of that division ever since. These facts constitute a strong case of practical location, and a line thus estab-

lished should not be disturbed.   (*Baldwin* v. *Brown*, 16 N.
Y. 359.)

I have not failed to notice the important evidence given by
the plaintiff as to certain monuments.   This evidence would
be quite controlling but for the practical location of the line,
and the long acquiescence therein; but it cannot be allowed to
disturb a line which has been thus located.   The finding, there-
fore, that the embankment was erected on the land of the de-
fendant should have been sustained at the General Term.

Whether the channel dug by the defendant, which is com-
plained of, was upon the land of the plaintiff, or upon the land
of the defendant, depends upon the meaning of certain bounda-
ries and courses in deeds which were put in evidence.   The
first deed is one from one of the predecessors of the defendant
in 1848, to Barber, which describes the land conveyed as be-
ginning at a stake, and thence running upon certain lines, and
finally " thence north 78° west 2 chains and 80 links to a willow
tree near the water of the Sauquoit creek; thence south-easterly
along the east bank of said creek to the line of land owned by
L. Miller & Sons, etc., reserving always to the party of the first
part the right to flow with water as much of said premises as
may become necessary from time to time for the full enjoyment
of all their water-power."   Then Barber conveyed by the same
description, with the same reservation, to Hopkins; and in
1853 Hopkins conveyed the same land, with the same reserva-
tion, to Millard, the grantor of the plaintiff, describing the
land as follows : " Beginning at a willow tree at the north-west
corner of the premises, near the water of the Sauquoit creek;
thence southerly along the east bank of said creek to the line
of land formerly owned by Chauncey Cosset, etc., reserving "
the right to flow.   If the channel was dug upon the land
covered by these deeds, it was a trespass upon the plaintiff.   If
not, then it was upon the land of the defendant.   The line
running to the willow tree, in the deed to Barber, is the
northerly line of the lot conveyed, and that line stops at its
westerly end at that tree, which is sixty-three links from the
creek.   If it had been intended to carry that line still further

west to the creek — a prominent natural boundary — it would have been so written. But what is still more significant is, that in the deed to Millard, and in the deed from Millard to the plaintiff, the land is described by a line beginning "at the willow tree at the north-west corner of the premises, near the water." Thus the willow tree is the corner, and that corner was not fixed on the margin or on the bank of the stream, as it could have been if it had been so intended. The willow tree is then a starting point. The claim of the plaintiff is that from that point the line must be carried westerly sixty-three links to the creek, and then southerly along the east bank of the creek as it winds and turns, and thus the channel would be within the description. But the defendant claims that the line from the willow tree should run southerly or south-easterly until it strikes the east bank of the creek, and thence along such bank; and if it be thus run, the channel will be without the description and upon defendant's land. There is some doubt as to how it was intended, by the parties to the conveyances, the line from the willow tree should run. There is no evidence as to the condition or precise location of the stream of the creek at the date of the deeds, and we have but little light to guide us in the construction of the language used. With some hesitation we are brought to the conclusion that the defendant's claim has the best foundation. The careful limiting of the line at the willow tree shows that it was intended that the next course should start southerly from that point, and not westerly and then southerly. We, therefore, concur with the decision of the Special Term as to this channel.

But as to both the embankment and the channel, there is another view equally fatal in this action to the plaintiff. Even if the embankment and the channel be upon the plaintiff's land, there is no ground for equitable relief. In that case, the defendant committed a trespass in constructing the embankment, and the plaintiff could sue him in an action at law and recover the damages, and could remove the embankment from his land; and he could sue the defendant and recover damages for the trespass in digging upon his land the channel. There

is no evidence showing any ground for equitable relief ; and the questions as to the disputed lines, and the amount of damages caused by the trespasses, are matters strictly of legal cognizance, to be litigated in the ordinary way of legal actions.

It follows from these views that the judgment of the General Term, so far as it affirms the judgment of the Special Term, should be affirmed ; and the order of the General Term, reversing in part the judgment of the Special Term, should be reversed ; and the judgment of the Special Term affirmed, with costs to the defendant.

All concur, except ANDREWS, J., who concurs in result, but dissents as to construction of deed.

Judgment accordingly.