## PEARSALL v. WESTCOTT et al.

(Supreme Court, Appellate Division, Third Department. May 4, 1898.)

1. BOUNDARIES—ESTABLISHMENT BY ACQUIESCENCE.
   In an action by a lot owner, who claimed half of a wall between his lot and that of an adjoining lot, the evidence showed that the wall had been built by defendant's ancestor as a part of his residence, when there was no building on plaintiff's lot which extended to the line, and that the building was occupied for 24 years before plaintiff purchased his lot. *Held*, that the wall, as a boundary, had been established by acquiescence.

2. EASEMENT IN WALL—RIGHT OF POSSESSION.
   Where a wall is built as part of a house, and used for over 20 years by the owner, the subsequent use of the wall by an adjoining lot owner will not deprive the original owner of the possession thereof, although such use may entitle the adjoining owner to an easement.

3. EVIDENCE OF TITLE.
   Where a strip four inches wide between two adjoining lots is in dispute, the title of one claimant is not established by testimony of a surveyor that the claimant's opposite line "seemed to be correct," and that, measuring from that line, the width of the claimant's lot would include "about" the four inches in dispute.

4. EASEMENT—CONSTRUCTION.
   Where a lot owner has used a wall built upon an adjoining lot along the boundary line for 20 years for the support of the timbers of his house, he has a right to an easement to the extent of the ancient user, and no more, and the owner has a right to use it in any way which will not conflict with that right.

Appeal from special term, Saratoga county.

Action by Samuel J. Pearsall against James H. Westcott and another. From a judgment for plaintiff, defendants appeal. Reversed.

The plaintiff, in his complaint, averred that he was the owner of part of lot No. 52 on a map of lands of Henry Walton, deceased, in Saratoga Springs, N. Y.; that the defendants owned the adjoining premises on the north; that he had been in possession of his said lot over 30 years, and the wall between his premises and that of the defendants had been on the same line for the whole of said period. Said wall is eight inches thick, and the north line of plaintiff's lot runs through its center, he owning the south half thereof. He also alleged that the defendants, in altering and repairing their building, had broken through said wall, and had laid timbers on the south four inches owned by plaintiff, without his consent, and built an additional story, with intent to insert more timbers in said wall, and to take possession of said south four inches thereof without his

consent. The plaintiff claimed a judgment for damages, and asked for an injunction restraining such alleged unlawful acts of the defendants. The trial judge found that the plaintiff was the owner of the premises described in the complaint, and hence that his lot extended to a line running through the center of said wall, and also found as follows: "That the wall between the premises of the plaintiff and defendants is, and has been for over thirty years, an eight-inch brick wall, and has been used by the owners of both premises as a party wall, and the timbers of both houses have rested therein, for over thirty years, and the plaintiff has occupied, by his timbers and house, the south half thereof, openly, notoriously, and adversely, during all of said period, claiming to own it under a written instrument; that the defendants, in the year 1897, in the course of making alterations and repairs upon their said premises, have taken possession of and used the entire wall, and threatened to exclude, and have excluded, the plaintiff therefrom, and have broken into his said premises, and injured the same, to the amount of $30." He also found as conclusions of law that "the said wall between the premises of plaintiff and defendants is a party wall, and has been so used for more than thirty years, and the plaintiff is entitled to the use of it as such; that he is entitled to an injunction perpetually enjoining and restraining the defendants and their agents and servants from entering upon or interfering with the south one-half thereof, and from removing or in any manner disturbing the plaintiff's timbers in said wall, and from excluding him from the use of said wall as a party wall; that the plaintiff is also entitled to recover from the defendants the sum of thirty dollars damages suffered by him by reason of the acts of the defendants in breaking through the said wall into the plaintiff's said premises." Judgment was entered accordingly.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Edgar T. Brackett (W. P. Butler, of counsel), for appellants.
A. W. Shepherd, for respondent.

PER CURIAM. The court below found that the plaintiff was the owner of the premises described in the complaint, and hence that his north line extended to the center of the 8-inch brick wall between his lot and that of the defendants; also, that said wall was a party wall, used as such for over 30 years; and that the plaintiff had a right to use it as such; but he directed a judgment enjoining and restraining the defendants "from entering upon or interfering with the south half thereof." After a careful consideration of the evidence, we are of the opinion that it does not sustain the finding of the learned trial judge that the plaintiff's north line extended to the center of the wall in question. The undisputed testimony of the witnesses Bockes and Marvin shows that the south wall of the defendants' building stood in 1839 identically where it did at the time of the trial. This building was erected by the defendants' ancestor, Judge Warren, and the evidence shows that he built this wall as a portion of his house. The laying of the brick in Flemish bond to the south side of the wall, the brick headers extending through it, the location of the chimneys and chimney caps, the battlements on the north and south walls, leave no room for doubt in this regard, in the absence of any conflicting testimony. And it is also apparent that, when Judge Warren erected the building, there was no structure on the north line of the adjoining lot now owned by the plaintiff. The testimony of the witness Darrow alone might not be sufficient to establish that fact, but the statements of the witnesses Rattelle and Westcott, who

are not contradicted, show that the joints on the south face of the wall were all struck with a trowel. This could not have been done had there been a building south of the wall at the time Judge Warren erected the house. The recitals in the deed introduced by the plaintiff, if competent evidence as against the defendants, do not conflict with this testimony. Such recitals show, at the most, that in 1837 there was a building on the lot now owned by the plaintiff, but not where it was located on the lot, or that it extended to the premises of the defendants. If otherwise, the fact being undisputed that the wall in question was struck with a trowel on the south side, thus showing that, when erected, no building was standing there, it follows that Judge Warren must have built the wall some time between 1833, when he purchased the property, and prior to 1837, when, from the recitals, it appears that a store building was erected on the lot now owned by the plaintiff.

We think, therefore, that the testimony disclosed the fact that Judge Warren erected this wall in question as a part of his building at a time when there was no erection on the lot adjoining on the south. Hence, at the time when the plaintiff purchased his lot, in 1863, Judge Warren had occupied with his building the disputed four inches for 24 years. The rule is well settled that "when there has been a practical location of a dividing line between the lands of adjoining owners, and a long acquiescence therein, the line so established will not be disturbed." Avery v. Woolen Co., 82 N. Y. 582. Therefore, whether the plaintiff's paper title covered the disputed four inches of the wall in question or not, Judge Warren had acquired title thereto by possession for a period of over 20 years prior to 1863. There is no evidence in the case that that possession had ever been questioned or disturbed. The plaintiff did not prove that the timbers of his house had been placed in the wall in question before the expiration of 20 years from the time of the erection of the building. But, had he produced evidence to that effect, it would not have proved that Judge Warren ceased to be in the undisputed possession of the four inches of land in question on which he had erected his house, but would have shown or tended to show a right of the plaintiff's grantors acquired, by license or grant, to support their timbers in Judge Warren's south wall, which, if continued for a long enough period, would have become a right by prescription. So, the wall in question, having been erected by Judge Warren as a part of his house, and occupied by him for over 20 years before it is shown that any use thereof was made by the plaintiff or his grantor for the support of the timbers of his house, the subsequent use of the said wall by the plaintiff since 1863 did not deprive Judge Warren, his descendants or grantees, of the possession thereof. Such use might be sufficient to prove a right on the part of the plaintiff by prescription to an easement in the wall; but, subject to such easement, it left the possession of the defendants, and those through and from whom they derived title of the disputed four inches, undisturbed. It follows that the defendants and their grantors and ancestors had remained in undisputed possession of the whole wall, subject, perhaps, to an easement acquired therein by the plaintiff, for

a period of about 60 years at the time of the trial of the action, and their title thereto cannot now be questioned.

Nor did the plaintiff show any paper title to this strip of land. He claimed to own lot No. 51 on the Walton map, 60 feet wide and 150 feet deep, and also a portion of the adjoining lot No. 52 on said map, 20 feet wide and of the same depth, which is bounded on the south by said lot No. 51, and on the north by the premises of the defendants. The only testimony given to locate this lot was that of the surveyor, Mott. This witness said: "I made various tests and measurements for general occupation, and found that the line between the Ellsworth property which is the property lying on the south side of the Pearsall property, and it seemed to be correct." Assuming that the Ellsworth line was the correct south line of the plaintiff's lot, he measured from it 80 feet north, and it embraced about 4 inches of the wall in question. There was no proof that the line between the Ellsworth property and that of the plaintiff was the correct south line of the plaintiff's premises. In the absence of evidence that the monument used by the surveyor in making his measurements was to be relied upon, his testimony was of no value. Again, the witness testified: "It struck about four inches. I am not positive to half an inch, but about four inches. * * * I don't know as I attempted to locate the exact line between the two." The question in the case was in regard to four inches of land. In such a case, a survey and measurement, to be of any value, should be made with the utmost care. The exact line between the parties, which the witness did not attempt to locate, was the very thing he was called upon to determine. It is quite evident that on such testimony the court was not authorized to find that any part of the building of the defendants, which had stood for 60 years in the possession of the defendants or that of their ancestors, was upon the lot of the plaintiff. We conclude that the finding of the trial court that the plaintiff owned the land on which the south half of the wall in question was located was not supported by the evidence.

The finding of the trial judge that the 8-inch wall between the premises of the plaintiff and the defendants was a party wall, and his legal conclusions based on such finding, remain to be considered. Although the wall in question was entirely upon the premises of the defendants, it might, under certain circumstances, be a party wall. 18 Am. & Eng. Enc. Law, 3; Jones, Easem. § 632; 2 Washb. Real Prop. (5th Ed.) p. 386. Ordinarily, a party wall between two adjacent proprietors is placed, one-half on the lands which each own in severalty. In such case each owns the portion of the wall on his own land, subject to the use of the other thereto. Sherred v. Cisco, 4 Sandf. 480. But the term "party wall" has been applied to a structure entirely on the premises of one adjoining owner, which is subject to an easement or right of the other therein, acquired by grant or prescription. In this case, as we have seen, the plaintiff showed no title to the land on which the south half of the wall is located. His right to the wall, if any, must rest upon prescription, under doctrines stated in Schile v. Brokhahus, 80 N. Y. 614, and kindred cases. The plaintiff testified that when he purchased the property, in 1863, there was a building on it, the timbers of which were supported by the wall in question, and

which had been thus supported since that period.    Except for the support of the timbers of his house, no other use of the wall was shown to have existed for a period of 20 years.    In such a case, the plaintiff has the right to maintain the easement to the extent of the ancient user and no more.    Jones, Easem. § 702.

In 2 Washb. Real Prop. (5th Ed.) p. 386, it is said:

"It does not seem to be necessary that a party wall should stand half upon each of the adjoining parcels of land.    It may stand half upon each or wholly upon one, and may or may not be the common property of the two proprietors. The rights of the parties in respect to the same may be collected and determined from the manner in which the parties have used the same for the period of time requisite to create a prescriptive right."

Assuming, therefore, that the evidence justified a finding by the trial court that the plaintiff had acquired a right to use the wall in question for the support of his timbers, there was no other use shown which had existed for a period of 20 years.    The plaintiff, therefore, was entitled to the continuance of the use of the wall for such support, and for no other purpose.    As there was no evidence to show that the defendants had interfered or proposed to interfere with the use of the wall for the support of the timbers of plaintiff's house, it is not apparent that the plaintiff had any just cause of action against the defendants, unless the latter, in making the changes in their house, had trespassed upon the premises of the former south of the wall. The defendants, subject to the right of the plaintiff for the use of the wall for the support of the timbers, were the owners of said wall, and had the right to use the whole thereof.

The trial judge, finding that the wall in question was a party wall, determined that the plaintiff was entitled to use it as such; but the defendants were, in effect, enjoined from using the south half of said wall.    This determination cannot be sustained.    If it was a party wall, even if the plaintiff had title to the south half thereof, the defendants had the right to use the whole wall, providing that such use would not interfere with or be detrimental to such right as the plaintiff had acquired therein.    Negus v. Becker, 143 N. Y. 303, 38 N. E. 290; Nash v. Kemp, 49 How. Prac. 522.    Of course, if it can be shown that the defendants, in altering and repairing their building, have broken through the 8-inch wall into the plaintiff's premises, and damaged them, or in any manner interfered with such rights in said wall, if any, that the plaintiff has acquired by prescription, they are responsible therefor in damages.

The judgment should be reversed, and a new trial granted; costs to abide the event.