SAMUEL J. PEARSALL, Respondent, *v.* JAMES H. WESTCOTT and CAROLINE W. WESTCOTT, Appellants.

*Party wall — built entirely upon the premises of one of two adjoining owners — rights of the other adjoining owner therein — monument measured from by a surveyor.*

Although a wall be entirely upon the premises of one of two owners of adjoining lots, it may still, under certain circumstances, be a party wall, and the rights of the parties may be determined by the use which they have made of it for a period of time sufficient to create a prescriptive right.

As against the owner of the land upon which such a wall is built, the adjoining owner, whose timbers are supported by it, has no right of action to enjoin him from using the wall unless the former, in making changes in the wall, has trespassed upon the latter's premises, the former having the right to use the whole wall, provided that such use does not interfere with or prove detrimental to such right as the latter has acquired therein.

In the absence of evidence that the monument used by a surveyor in making his measurements is to be relied upon, his testimony is of no value.

APPEAL by the defendants, James H. Westcott and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Saratoga on the 2d day of December, 1897, upon the decision of the court rendered after a trial at the Saratoga Trial Term before the court without a jury.

The plaintiff in his complaint averred that he was the owner of part of lot No. 52 on a map of lands of Henry Walton, deceased, in Saratoga Springs, N. Y.; that the defendants owned the adjoining premises on the north ; that he had been in possession of his said lot over thirty years, and the wall between his premises and that of the defendants had been on the same line for the whole of said

period; that said wall is eight inches thick, and the north line of plaintiff's lot runs through its center, he owning the south half thereof. He also alleged that the defendants, in altering and repairing their building, had broken through said wall and had laid timbers on the south four inches owned by plaintiff, without his consent, and built an additional story with intent to insert more timbers in said wall, and to take possession of said south four inches thereof without his consent.

The plaintiff claimed a judgment for damages, and asked for an injunction restraining such alleged unlawful acts of the defendants.

The trial judge found that the plaintiff was the owner of the premises described in the complaint, and hence that his lot extended to a line running through the center of said wall, and also found as follows: "That the wall between the premises of the plaintiff and defendants is and has been for over thirty years, an eight-inch brick wall, and has been used by the owners of both premises as a party wall, and the timbers of both houses have rested therein for over thirty years, and the plaintiff has occupied by his timbers and house the south half thereof, openly, notoriously and adversely during all of said period, claiming to own it under a written instrument.

"That the defendants in the year 1897, in the course of making alterations and repairs upon their said premises, have taken possession of and used the entire wall, and threatened to exclude and have excluded the plaintiff therefrom, and have broken into his said premises and injured the same to the amount of $30."

He also found, as conclusions of law, that "the said wall between the premises of plaintiff and defendants is a party wall, and has been so used for more than thirty years, and the plaintiff is entitled to the use of it as such. That he is entitled to an injunction perpetually enjoining and restraining the defendants and their agents and servants from entering upon or interfering with the south one-half thereof, and from removing or in any manner disturbing plaintiff's timbers in said wall, and from excluding him from the use of said wall as a party wall; the plaintiff is also entitled to recover from the defendants the sum of thirty dollars damages suffered by him by reason of the acts of the defendants in breaking through the said wall into plaintiff's said premises."

Judgment was entered accordingly.

*Edgar T. Brackett* and *Walter P. Butler*, for the appellants.

*A. W. Shepherd*, for the respondent.

PER CURIAM:

The court below found that the plaintiff was the owner of the premises described in the complaint, and, hence, that his north line extended to the center of the eight-inch brick wall between his lot and that of the defendants; also that said wall was a party wall, used as such for over thirty years, and that the plaintiff had a right to use it as such, and he directed a judgment enjoining and restraining the defendants "from entering upon or interfering with the south one-half thereof."

After a careful consideration of the evidence we are of the opinion that it does not sustain the finding of the learned trial judge that the plaintiff's north line extended to the center of the wall in question. The undisputed testimony of the witnesses Bockes and Marvin shows that the south wall of the defendants' building stood, in 1839, identically where it did at the time of the trial. This building was erected by the defendants' ancestor, Judge Warren, and the evidence shows that he built this wall as a portion of his house. The laying of the brick in flemish bond to the south side of the wall, the brick headers extending through it, the location of the chimneys and chimney caps, the battlements on the north and south walls, leave no room for doubt in this regard, in the absence of any conflicting testimony.

And it is also apparent that when Judge Warren erected the building there was no structure on the north line of the adjoining lot now owned by the plaintiff. The testimony of the witness Darrow alone might not be sufficient to establish that fact, but the statements of the witnesses Rattelle and Westcott, who are not contradicted, show that the joints on the south face of the wall were all struck with a trowel. This could not have been done had there been a building south of the wall at the time Judge Warren erected the house.

The recitals in the deeds introduced by the plaintiff, if competent evidence as against the defendants, do not conflict with this testimony. Such recitals show, at the most, that in 1837 there was a

building on the lot now owned by the plaintiff, but not where it was located on the lot, or that it extended to the premises of the defendants. If otherwise, the fact being undisputed that the wall in question was struck with a trowel on the south side, thus showing that when erected no building was standing there, it follows that Judge Warren must have built the wall sometime between 1833, when he purchased the property, and prior to 1837, when from the recitals it appears that a store building was erected on the lot now owned by the plaintiff.

We think, therefore, that the testimony disclosed the fact that Judge Warren erected this wall in question as a part of his building at a time when there was no erection on the lot adjoining on the south. Hence, at the time when the plaintiff purchased his lot in 1866, Judge Warren had occupied with his building the disputed four inches for twenty-four years. The rule is well settled that " when there has been a practical location of the dividing line between the lands of adjoining owners and a long acquiescence therein the line so established will not be disturbed." (*Avery* v. *Empire Woolen Co.*, 82 N. Y. 582.) Therefore, whether the plaintiff's paper title covered the disputed four inches of the wall in question or not, Judge Warren had acquired title thereto by possession for a period of over twenty years prior to 1863. There is no evidence in the case that that possession had ever been questioned or disturbed. The plaintiff did not prove that the timbers of his house had been placed in the wall in question before the expiration of twenty years from the time of the erection of the building. But had he produced evidence to that effect, it would not have proved that Judge Warren ceased to be in the undisputed possession of the four inches of land in question on which he had erected his house, but would have shown or tended to show a right of the plaintiff's grantors acquired by license or grant to support their timbers in Judge Warren's south wall, which, if continued for a long enough period, would have become a right by prescription. So the wall in question having been erected by Judge Warren as a part of his house, and occupied by him for over twenty years before it is shown that any use thereof was made by the plaintiff or his grantor for the support of the timbers of his house, the subsequent use of the said wall by the plaintiff since 1863 did not

deprive Judge Warren, his descendants or grantees of the possession thereof. Such use might be sufficient to prove a right on the part of the plaintiff by prescription to an easement in the wall, but subject to such easement, it left the possession of the defendants, and those through and from whom they derived title of the disputed four inches, undisturbed.

It follows that the defendants and their grantors and ancestors had remained in undisputed possession of the whole wall subject, perhaps, to an easement acquired therein by the plaintiff for a period of about sixty years at the time of the trial of the action ; and their title thereto cannot now be questioned.

Nor did the plaintiff show any paper title to this strip of land.

He claimed to own lot No. 51 on the Walton map, 60 feet wide and 150 feet deep, and also a portion of the adjoining lot No. 52 on said map, 20 feet wide and of the same depth, which is bounded on the south by said lot No. 51, and on the north by the premises of the defendants. The only testimony given to locate this lot was that of the surveyor, Mott. This witness said : " I made various tests and measurements for general occupation, and I found that the line between the Ellsworth property, which is the property lying on the south side of the Pearsall property, and it seemed to be correct."

Assuming that the Ellsworth line was the correct south line of the plaintiff's lot, he measured from it eighty feet north, and it embraced about four inches of the wall in question. There was no proof that the line between the Ellsworth property and that of the plaintiff was the correct south line of the plaintiff's premises. In the absence of evidence that the monument used by the surveyor in making his measurements was to be relied upon, his testimony was of no value. Again, the witness testified : " It struck about four inches. I am not positive to half an inch, but *about* four inches. * * * I don't know as I attempted to locate the exact line between the two." The question in the case was in regard to four inches of land.

In such a case a survey and measurement, to be of any value, should be made with the utmost care. The exact line between the parties, which the witness did not attempt to locate, was the very thing he was called upon to determine. It is quite evident that, on

such testimony, the court was not authorized to find that any part of the building of the defendants, which had stood for sixty years in the possession of the defendants or that of their ancestors, was upon the lot of the plaintiff. We conclude that the finding of the trial court that the plaintiff owned the land on which the south half of the wall in question was located was not supported by the evidence.

The finding of the trial judge that the eight-inch wall between the premises of the plaintiff and the defendants was a party wall, and his legal conclusions based on such finding, remains to be considered. Although the wall in question was entirely upon the premises of the defendants, it might, under certain circumstances, be a party wall. (18 Am. & Eng. Ency. of Law, 3; Jones Ease. § 632; 2 Washb. Real Prop. [5th ed.] 386.)

Ordinarily a party wall between two adjacent proprietors is placed one-half on the lands which each own in severalty. In such case, each owns the portion of the wall on his own land, subject to the use of the other thereto. (*Sherred* v. *Cisco*, 4 Sandf. 480.) But the term "party wall" has been applied to a structure entirely on the premises of an adjoining owner, which is subject to an easement or right of the other therein, acquired by grant or prescription. In this case, as we have seen, the plaintiff showed no title to the land on which the south half of the wall is located. His right to the wall, if any, must rest upon prescription, under doctrines stated in *Schile* v. *Brokhahus* (80 N. Y. 614) and kindred cases. The plaintiff testified that when he purchased the property in 1863 there was a building on it, the timbers of which were supported by the wall in question, and which had been thus supported since that period. Except for the support of the timbers of his house, no other use of the wall was shown to have existed *for a period of twenty years.* In such a case the plaintiff has the right to maintain the easement *to the extent of the ancient user, and no more.* (Jones Ease. § 702.) In 2 Washburn on Real Property (5th ed. 386) it is said : " It does not seem to be necessary that a party wall should stand half upon each of the adjoining parcels of land. It may stand half upon each or wholly upon one, and may, or may not, be the common property of the two proprietors. The rights of the parties in respect to the same may be collected and determined from the manner in which

the parties have used the same for the period of time requisite to create a prescriptive right."

Assuming, therefore, that the evidence justified a finding by the trial court that the plaintiff had acquired a right to use the wall in question for the support of his timbers, there was no other use shown which had existed for a period of twenty years. The plaintiff, therefore, was entitled to the continuance of the use of the wall for such support, and for no other purpose. As there was no evidence to show that the defendants had interfered, or proposed to interfere, with the use of the wall for the support of the timbers of plaintiff's house, it is not apparent that the plaintiff had any just cause of action against the defendants, unless the latter, in making the changes in their house, had trespassed upon the premises of the former south of the wall. The defendants, subject to the right of the plaintiff for the use of the wall for the support of the timbers, were the owners of said wall, and had the right to use the whole thereof.

The trial judge, finding that the wall in question was a party wall, determined that the plaintiff was entitled to use it as such; but the defendants were, in effect, enjoined from using the south half of said wall. This determination cannot be sustained. If a party wall, even if the plaintiff had title to the south half thereof, the defendants had the right to use the whole wall, providing that such use would not interfere with or be detrimental to such right as the plaintiff had acquired therein. (*Negus* v. *Becker*, 143 N. Y. 303; *Nash* v. *Kemp*, 49 How. Pr. 522.)

Of course, if it can be shown that the defendants, in altering and repairing their building, have broken through the eight-inch wall into the plaintiff's premises and damaged them, or in any manner interfered with such rights in said wall, if any, that the plaintiff has acquired by prescription, they are responsible therefor in damages.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concurred.

Judgment reversed and a new trial granted, costs to abide the event.