125 So.2d 311 (1960)
FLORIDA POWER CORPORATION, Appellant,
v.
M.S. McNEELY and Beth B. McNeely, his wife, Appellees.
No. 1650.
District Court of Appeal of Florida. Second District.
December 2, 1960.
Rehearing Denied January 3, 1961.
*313 S.E. Simmons, St. Petersburg, for appellant.
Stuart B. Warren, St. Petersburg, for appellees.
KANNER, Judge.
The purpose of the suit below was to have the court require that the defendant, Florida Power Corporation, either remove its transmission lines and tower from plaintiffs' property and return such property to its original condition or that it prosecute condemnation proceedings for the purpose of determining the value of the right of way appropriated and resultant damages, or to have the court decree and enforce a lien against the right of way for the amount to be determined as due. Decreeing that the defendant corporation pay to the plaintiffs full compensation for the right of way, including the value of timber and topsoil removed, the chancellor directed that the compensation sum should be ascertained by a jury in a condemnation hearing to be had before the court in accordance with the eminent domain statutes at a time to be set at the next sounding of the docket. Appeal by the power corporation has been taken from that adverse decree.
In 1956, the plaintiffs purchased five lots of a certain subdivision in Pinellas County from the administrator of the Estate of C. Verna Hangeros Gabriel. Across three of those lots the defendant power corporation had in 1939 cleared a 100 foot right of way and suspended above it a power line. Since then the corporation has maintained the power line, has checked it about every thirty days, and has recleared the right of way approximately every four years. The right of way as it crosses plaintiffs' lands was specifically described in the evidence and in the final decree.
From 1939 to 1955 there were no poles nor towers upon the plaintiffs' property, but the power line was suspended along the right of way from poles located upon adjacent property. In 1955, the defendant replaced the old power line with a new one. Then for the first time the corporation made a land installation upon the right of way by constructing upon a very small portion of it a steel tower for the purpose of sustaining the new line. The power corporation has used the right of way without making compensation, although there was an unsuccessful attempt to contact the owner in 1939, and there were some negotiations in 1954 with the owner regarding purchase of an easement.
Subsequent to the purchase of the lots, the plaintiffs also bought an assignment of the cause of action which the Gabriel estate had against the defendant power corporation for its use of and entry upon the right of way. The purchase of this assignment was approved by the probate court.
This suit having been instituted on November 12, 1957, twenty years had not elapsed since the original clearing of the 100 foot right of way by the power corporation in 1939. Commenting upon the requirements of sections 95.18 and 95.19, Florida Statutes, F.S.A.,[1] for acquiring title *314 by adverse possession without color of title, the lower court refused to apply the seven year limitation period specified by section 95.18 as the prescriptive period and held that the prescriptive period for acquisition of a right of way is the common law period of twenty years. As indicated above, the court ordered the defendant to pay as compensation an amount to be ascertained by a jury at a condemnation hearing pursuant to the eminent domain statutes.
In essence, the defendant power corporation contends (1) that the deed of conveyance of the land to the plaintiffs as it may affect the corporation is champertous and void because the defendant was in adverse possession of the right of way at the time the deed was executed and delivered; (2) that the requisite period for acquisition by adverse possession of an easement for right of way upon which to erect and maintain a transmission line is not twenty years but instead is seven years; (3) that the proviso of section 95.18 is not applicable to an easement; (4) that the plaintiffs' right was lost or abandoned through acquiescence, or that it was barred by laches; and (5) that the chancellor authorized a jury to be empanelled to fix the compensation instead of requiring the institution and prosecution of an independent action in condemnation under chapter 73, Florida Statutes, F.S.A.
On the first question, in urging that the deed of conveyance of the property to the plaintiffs by the estate as it relates to the right of way is champertous and void and so bars an action against the corporation, the defendant relies upon the common law doctrine which obtains in the Florida jurisdiction, that a deed of conveyance to lands executed by a person out of possession when the lands are adversely possessed by another is champertous and void as against the adverse possessor. See Alford v. Sinclair, Fla. 1951, 55 So.2d 727; Addis v. Hoagland, 1942, 150 Fla. 694, 8 So.2d 655; and 5 Fla.Jur., Champerty and Maintenance, section 9, pp. 558-559. This common law principle was founded partially upon considerations of public policy and partially upon the peculiar nature of livery of seisin, which could not lawfully be made if at the time of execution of the deed the lands were adversely possessed. Farrington v. Greer, 1927, 94 Fla. 457, 113 So. 722.
Let us see whether, under the factual situation here and under the applicable principles of law, it can be said that the power corporation had such possession *315 as to make the champerty rule operative. At the outset, we must proceed upon the premise that the controversy concerns an easement right of way. By the statutory policy of this state, a right of way may be acquired through an eminent domain proceeding by an electric power company for its transmission lines, and a right of way thus acquired is statutorily termed an easement. Section 74.141, Florida Statutes, F.S.A. This statutory authority is not exclusive. The power corporation takes the position that the right or interest which it contends it has acquired is an easement, and it does not claim title to the fee.
Because of the position assumed by the power corporation, we shall at this juncture discuss distinctions which exist between adverse possession and prescription. The right acquired under adverse possession is title and such acquisition necessitates possession. In acquisition of a prescriptive right, the essential element is use of the privilege without actual possession. One who acquires title by adverse possession must have exclusive possession, while as to a prescriptive right the use may be in common with the owner or the public. Title acquired through the avenue of adverse possession is a corporeal right, while a right acquired through the prescriptive process is an incorporeal hereditament in land. Downing v. Bird, Fla. 1958, 100 So.2d 57; and J.C. Vereen & Sons v. Houser, 1936, 123 Fla. 641, 167 So. 45.
As the most direct and simple approach to our solution of the problem here posed, quotations from and citations of various authorities may now be given; and from an amalgamation of these as support, together with the two Florida decisions just dealt with, we arrive at our conclusion on this question.
Concerning the nature of an easement, we quote from Thompson on Real Property, Vol. 1, section 321, pp. 511-513, wherein it is stated:
"An easement is a species of incorporeal hereditament, and as such it lies in grant, not in seisin. * * * Although imposed upon corporeal property, an easement carries no corporeal interest in or right to the land. Not being a possessory interest or an interest which may become possessory, it is not an estate. * * *"
From Restatement of the Law of Property, section 9, p. 23, it is further pointed out that:
"Such interests as easements, profits, restrictive covenants and agreements affecting the use of land, powers of appointment and rents are not possessory interests and are not interests which may become possessory."
Adverting again to Thompson on Real Property, Vol. 1, section 328, pp. 524 and 525, it is seen:
"An easement is not a right to the soil of the land or to any corporeal interest in it, but it is an incorporeal right in the corpus which is considered an interest in the land itself. While it is a right distinct from the ownership of the soil, it is more than a mere personal privilege. Also, while an easement does not operate to dispossess the owner of the fee, the title to the land may be a mere naked one with none of the usual advantages of ownership. * * *"
Rights under an easement are discussed in Jacobs v. Brewster, 1945, 354 Mo. 729, 190 S.W.2d 894, 898, wherein it is stated:
"`Continuous,' under the terms of the definition, does not mean `possession.' `He who has an easement in particular land is not and cannot be thereby in possession of the land; he can only use it.'"
This topic is further elaborated in 17A Am.Jur., Easements, section 112, p. 718, which states that:
"Since an easement is an incorporeal hereditament  a servitude imposed upon corporeal property, and not a part *316 of it  it gives no right to possess the land upon which it is imposed, but merely a right to the party in which it is vested to the enjoyment thereof."
Additionally, it may be seen in 2 C.J.S. Adverse Possession § 89, p. 646:
"Claim or enjoyment of an easement does not give an adverse right to the fee, and acts of ownership consistent with the easement will not start the statute of limitations running as respects the fee.
* * * * * *
"A title in fee will not be implied from user, where an easement only would secure the privilege enjoyed."
Rights under an easement are also a topic in the case of Morrill v. Mackman, 1872, 24 Mich. 279, 9 Am.Rep. 124:
"It does not displace the general possession by the owner of the land, but the person entitled to the easement has a qualified possession only, so far as may be needful for its enjoyment. Washb. on Easements, 8."
This is emphasized in the case of City and County of San Francisco v. Calderwood, 1867, 31 Cal. 585, 91 Am.Dec. 542:
"It gives no right to possess the land upon which it is imposed, but a right merely to the party in whom the way is vested to enjoy the way."
Finally, as to any applicability of the champerty rule which might appertain to easements, we observe in 10 Am.Jur., Champerty and Maintenance, section 21, p. 567:
"The champerty rule does not apply to the conveyance of easements, nor to the conveyance of any right for the recovery of which a personal action alone lies, the invasion of such right not being necessarily adverse and amounting to ouster of possession."
See also Maxwell v. McAtee, 1847, 48 Ky. 20, 48 Am.Dec. 409; Sherwood v. Burr, 1810, 4 Day, Conn., 244, 4 Am.Dec. 211; Pearsall v. Westcott, 1898, 30 App.Div. 99, 51 N.Y.S. 663; Petition of Burnquist, 1945, 220 Minn. 48, 19 N.W.2d 394; Stevens v. Headley, 1905, 69 N.J. Eq. 533, 62 A. 887; Texas Co. v. O'Meara, 1941, 377 Ill. 144, 36 N.E.2d 256; and Burnet v. Crane, 1894, 56 N.J.L. 285, 28 A. 591.
With reference to the subject of actions as they may relate to an easement, we deem it necessary to refer only to general authorities. Theoretically, since an easement is incorporeal, it lies in grant and cannot be created by livery of seisin. 28 C.J.S. Easements § 5, p. 639; and 17A Am.Jur., Easements, section 3, pp. 618-619, and section 18, p. 631. Generally, an action of ejectment will not lie to recover an incorporeal hereditament. 28 C.J.S. Ejectment § 6, p. 853, and section 13, p. 859; and 18 Am.Jur., Ejectment, section 14, pp. 17 and 18. An exception exists with respect to a public highway. See 11 Fla.Jur., Ejectment, section 6, p. 280; and Marion County v. Ray, 1932, 107 Fla. 124, 715, 144 So. 845. The proper remedy at law for injury to or disturbance of an easement is an action on the case and not an action of trespass or ejectment. 28 C.J.S. Easements § 107, p. 788. The enjoyment of an easement may be protected against interference through injunctive relief. See 11 Fla.Jur., Easements and Licenses, section 37, p. 261.
The defendant urges that the champerty rule applies to lesser interests in lands, such as easements, citing Vincent v. Hines, 1920, 79 Fla. 564, 84 So. 614. That case is dissimilar to the present one. In that action the railroad went into actual adverse possession by building a right of way, constructing railway tracks upon the land, and carrying on railroad operations. Ordinarily, a railroad right of way in Florida is not a mere easement or user for railroad purposes but is a fee vested in the railroad. Atlantic Coast Line R. Co. v. Duval County, 1934, 114 Fla. 254, 154 So. 331.
By comparative analysis of physical aspects of a railroad right of way and the ordinary power line easement as these aspects *317 lend themselves to use of lands, we perceive a difference. By the construction of its road bed, the installation of its ties and tracks, and through its railroading operations, a railroad adversely using land excludes the owner from and prevents his use of that land, and so exercises dominion over it and has possession. This is not to say that a railroad by arrangement or otherwise could not under any circumstances operate by virtue of an easement; but for the reasons stated, the usual adverse situation negates mere user. On the other hand, a power line principally utilizes a space-way and is not terrestially located as is a railroad right of way. Beneath the suspended power line many activities entirely consistent with use by the power company may be carried on. These activities may be of a productive nature; ordinary observation discloses a variety of instances wherein the lands beneath power lines are utilized for purposes of the owners of the lands involved. The nature of an easement depends upon its purpose, and the right to use the land beneath a power line for other purposes not conflicting nor interfering with the easement of the power corporation remains with the landowner. See Annotation, 6 A.L.R.2d 205. This is not to say that a power corporation could not own its right of way at all, but for the reasons stated, the ordinary adverse user in such circumstances does not establish possession.
The power corporation's project to secure a right of way, which involved the plaintiffs' lands only as one small segment of that right of way, covered considerable distances representing large areas of service comprehended by the project. It involved numerous property owners. The policy of the power corporation in this undertaking was to obtain easements; and for that purpose letters were written and mailed to the owners, with prepared easement forms enclosed for execution. As has been indicated, this method was pursued with the owner who had preceded plaintiffs. It would ordinarily appear that the acquiring of easements for transmission lines as a part of the power corporation's electrical system would be less expensive than acquiring title to the lands.
It cannot be said from the evidence here that there was actual adverse possession to the exclusion of the owner of the fee, but rather the evidence is more in accord with adverse user. The testimony shows use by the power corporation for operation of its transmission line. It shows that the line was repaired and maintained as necessity required, that approximately once each month the line was patrolled for inspection purposes, that the 100 foot right of way was checked about every four years and, if necessary, recleared to remove vegetative growth. It reveals that between the time of the original construction of the line and the year 1955, the power line spanned plaintiffs' three lots, but no poles nor towers were located thereon; and in that year a steel tower was erected on a small portion of the land when the line was rebuilt along the same position as before. The land itself was not occupied nor used by the power corporation except on occasion, as has been indicated, for repairs, maintenance, inspection, and infrequent reclearing. The uses and operations of the power corporation did not exclude the owner from the claimed right of way nor prevent any use not inconsistent with the use for the power line. There is nothing to show that the owner was prevented from using or having possession of the land or that the owner was ousted from possession.
That which has been done by the corporation does not fulfill the requirements for adverse possession without color of title as required by sections 95.18 and 95.19. It must be recognized that the adverse possession statutes concern acquisition only of title to the fee in lands through possession upon fulfillment of the statutory conditions specified. Again we point out that the right or interest claimed is that of an easement and not that of title to the fee.
We thus see that an easement is incorporeal and concerns use rather than actual *318 exclusive possession. Under the cited authorities as applied to the factual environment, with reference to the power corporation's claim of a prescriptive easement, we conclude that the champerty rule does not operate as a bar to the suit.
Additionally the power corporation, claiming that it was in adverse possession of the right of way at the time of the conveyance and that the conveyance was champertous, contends that the plaintiffs are without a cause of action since they did not own the land at the time of the original trespass. To support this contention the corporation cites Vincent v. Hines, supra, and Marianna & B.R. Co. v. Maund, 1911, 62 Fla. 538, 56 So. 670. It has already been indicated under our view that the power corporation was not in actual adverse possession of the right of way but rather exercised an adverse use. We point out that in the Marianna & B.R. Co. v. Maund case, it was said at page 672:
"In 15 Cyc. p. 795, it is said: `Damages for the taking of land, or for injury to land not taken, belong to the one who owns the land at the time of the taking or injury, and they do not pass to a subsequent grantee of the land, except by a provision to that effect in the deed, or by assignment.'" (Emphasis supplied).
The cited case of Marianna & B.R. Co. v. Maund is unlike the present case since in it the plaintiff neither owned the land in question nor the cause of action at the time he instituted suit, and the Supreme Court decided it was necessary that the plaintiff either be the owner of the land or of the right of action at the time the suit was brought. However, the Supreme Court recognized that there might be an assignment of the cause of action as indicated by the previously quoted portion of the opinion. Here, the plaintiffs not only owned the land through conveyance to them, but also had obtained an assignment of the cause of action held by the Gabriel estate prior to commencement of this suit. Further, in the Vincent v. Hines case there was no assignment of the cause of action.
Dealing with the question of assigning a cause of action, we find that in the case of State Road Department v. Bender, 1941, 147 Fla. 15, 2 So.2d 298, 300, a suit in equity, it was contended that since one of the parties plaintiff had acquired title to his lots after removal of materials from them by the state road department, he could not be compensated for those materials nor make any claim for a ditch right of way concerned. The court agreed that title to the lots was acquired after the materials were removed but stated that since that plaintiff had acquired an assignment of any right of action his grantor might have had before the suit was brought, he thereby became the real party in interest. Although the court stated that a cause of action arising from pure tort like personal injury could not be assigned, it did say:
"* * * it is well settled that a cause of action growing out of injury to property may be assigned especially when the assignee, as in this case, has acquired title to the property. 6 Corpus Juris Secundum, Assignments, § 34, p. 1082."
We arrive at the conclusion that the circumstances as they exist in this case do not preclude the cause of action from becoming operative under the assignment purchase by the plaintiffs.
The second point advanced by the power corporation is that, as to a public service company, the required period for acquisition by adverse possession of an easement for right of way upon which to erect and maintain a transmission line is seven years. The power corporation asserts that this is established by the Florida cases of Florida Southern R. Co. v. Loring, 5 Cir., 1892, 51 F. 932; Seaboard Air Line Ry. Co. v. Atlantic Coast Line R. Co., 1935, 117 Fla. 810, 158 So. 459; and Dunscombe v. Loftin, 5 Cir., 1946, 154 F.2d 963. These cases, however, are distinguishable from the present one because they primarily concern the acquisition *319 by a railroad of title to the fee by adverse possession and not the acquisition of a mere easement. The railroads involved had gone into actual possession through construction of their tracks and through railroading operations. That title was involved is clearly revealed by the Florida case cited as well as by the Dunscombe v. Loftin federal case. Concerning the early federal case of Florida Southern R. Co. v. Loring, as to the power corporation's contention here that an easement was involved, we point out that it was an action of ejectment in the usual form, that the only defense was the plea of "not guilty" which put in issue title to the land, and that the court held that the Florida statute on adverse possession without color of title was controlling in the matter.
Modern authorities have demonstrated a trend to abandon the theory that prescriptive rights are based upon presumption of a prior grant and to regard the acquiring of such rights as being brought about by methods substantially similar to those through which title by adverse possession is acquired. Downing v. Bird, supra. This, however, is not to say that the period for prescription is the same as that of adverse possession; but the principle enunciated in the Downing v. Bird case is that a prescriptive right may be acquired by actual, continuous, uninterrupted, and adverse use by the claimant of another's lands for a prescribed period, whatever that period may be, with knowledge of the owner or by use so open, notorious, and visible that knowledge of the use by an adverse claimant is imputed to the owner.
Although the statutory period for adverse possession has been shortened to seven years, there is no statute which specifically abbreviates the common law period of twenty years in which one may establish a prescriptive right. The power corporation's argument that the seven year period applies is negated by the court's specific holding in the J.C. Vereen & Sons v. Houser case that the twenty year period applies to the acquisition of an easement by prescription. Although the Supreme Court quoted authorities to indicate that the prescriptive period of adverse use must exist for a period at least equal to that prescribed by the statute of limitations for acquiring title to land by adverse possession, the court in holding that the twenty year period governed said [123 Fla. 641, 167 So. 48]:
"While title to real estate may be acquired by the exercise of actual exclusive adverse and continued possession for a period of seven years under color of title under our statute, that period of limitation cannot be held to apply to the acquisition by prescription of an easement which is incorporeal, in a corporeal hereditament. The right to continue the easement only in a corporeal hereditament under prescription may only be acquired by an adverse use of the privilege with the knowledge of the person against whom it is claimed, or by use so open, notorious, visible, and uninterrupted that knowledge will be presumed acquiesced in by the owner of the dominant estate and exercised under a claim of right adverse to the owner and continued by the person so claiming for the full period of 20 years."
In support of this same principle is the statement of the court in the case of Downing v. Bird, [100 So.2d 57] supra:
"Under the principles of law above set forth and the cases and authorities cited it was necessary for the defendants to allege and, by clear and positive proof, to prove (1) that the public had the continued and uninterrupted use or enjoyment of the plaintiff's lands for a roadway for a period of at least twenty years prior to the barricading thereof by the plaintiff's husband in February 1952. * * *"
This court held to like effect in Hunt Land Holding Company v. Schramm, Fla.App. 1960, 121 So.2d 697, 700 stating:
"In order to establish an easement by prescription, a claimant must prove *320 actual, continuous, uninterrupted use for a period of twenty years."
In this jurisdiction, therefore, the common law period of twenty years holds as to acquisition of a prescriptive right, and the period set by statute for acquisition of title by adverse possession does not apply. Thus general authorities and those from other jurisdictions relied upon by the power corporation as to this question are of no avail in Florida.
The third point here argued advances the query whether the proviso of section 95.18 is applicable to an easement. This proviso specifies a condition relating to the return for taxation and payment of taxes on the land possessed by the adverse claimant. It is one of the requirements which must be met in order to acquire title without color of title so that it is applicable to the acquisition of title through adverse possession. It does not concern the acquisition of an easement, but neither does the time period apply as prescribed by that statute for adverse possession.
We now consider the power corporation's fourth appeal question relating to whether plaintiffs' right was lost or abandoned through acquiescence and whether the claim is barred by laches. Without elaborating, we observe that there were negotiations as late as 1954 with the previous owner of the land as to purchase of an easement but that the owner died before agreement was reached as to price. We find no merit to the contention that the owner had abandoned the right to compensation. Concerning laches, it is an affirmative defense and one element that must be established is that delay in bringing suit results in prejudice or injury to the party asserting it. It would appear that the power corporation is in the same position today as when in 1939 it began using the property for its power line. No injury or prejudice has been shown due to delay in bringing suit.
The fifth and last contention of the power corporation is that the court erred in not requiring the institution and prosecution of an independent action in condemnation under chapter 73, Florida Statutes, F.S.A. The decretal part of the court's order required that the power corporation pay to the plaintiffs full compensation for the right of way and the value of the timber and topsoil removed and that the amount of compensation be ascertained by a jury of twelve men at a condemnation hearing to be had in accordance with the eminent domain statutes before the court at a time for hearing to be set at the next sounding of the docket. Jurisdiction was retained by the court for the purpose of making further orders as might be necessary. We cannot tell from the wording of the order whether it was intended by the chancellor that the actual trial be had only as an incident to or phase of the equity suit by the empanelling of a jury for the trial of the case at the next term of court, or whether it was intended that a separate condemnation proceeding be brought under the eminent domain statutes, or to what extent chapter 73 is to be observed.
An organization possessed of the power of eminent domain may properly be ordered to exercise that power as a means of compensating a private property owner for property taken. Broward County v. Bouldin, Fla.App. 1959, 114 So.2d 737; and State Road Department of Florida v. Tharp, 1941, 146 Fla. 745, 1 So.2d 868. Such condemnation hearing cannot be conducted as an incident to the main proceedings in equity; but, in order that the requirements of the eminent domain statutes be fulfilled, an independent action in condemnation is required. See Florida State Turnpike Authority v. Anhoco Corp., Fla. App. 1958, 107 So.2d 51.
The decree should be revised so as to require an independent eminent domain proceeding, and the cause is remanded for that purpose. Otherwise the decree is affirmed.
Affirmed in part and reversed in part.
ALLEN, C.J., and CARLTON, VASSAR B., Associate Judge, concur.
NOTES
[1] Section 95.18. "Where it shall appear that there has been an actual continued occupation for seven years of premises under a claim of title exclusive of any other right, but not founded upon a written instrument, or a judgment or decree, the premises so actually occupied, and no other, shall be deemed to have been held adversely; provided that during the period of seven years aforesaid the person so claiming adverse possession without color of title shall have within a year after entering into possession made a return of said property by proper legal description to the assessor of the county wherein situated and has subsequently, during each year paid all taxes theretofore or thereafter levied and assessed against the same and matured installments of special improvement liens theretofore or thereafter levied and assessed against the same by the state and county and by city or town, if such property be situated within any incorporated city or town, before such taxes become delinquent."

Section 95.19. "For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument, judgment or decree, land shall be deemed to have been possessed and occupied in the following cases only: (1) Where it has been protected by substantial enclosure; or, (2) Where it has been usually cultivated or improved; (3) Provided, however, no such land shall be deemed to have been held adversely under the provisions of subsections (1) and (2) above unless within one year after the entry by such adverse owner, he has returned the said property by proper legal description to the assessor of the county wherein situated, and has subsequently, during each year, paid all taxes theretofore or thereafter levied and assessed against the same and matured installments of special improvement liens theretofore or thereafter levied and assessed against the same by the state and county and by any city or town, if such property be situated within any incorporated city or town, before such taxes become delinquent, except that provision (3) shall not be applicable to suits pending on June 5, 1939."